TUDOR CITY NINTH UNIT, INC., Plaintiff, *v.* HELEN PERKETT, Defendant.

Municipal Court of New York, Borough of Manhattan, Ninth District, March 25, 1932.

*Becker & Leibowitz*, for the plaintiff.

*Samuel J. Singer*, for the defendant.

LEWIS, DAVID C., J.    On November 15, 1930, the defendant became the tenant and occupant of an apartment in the building known as Windsor Tower, located in the borough of Manhattan, city of New York, under a written hiring made with the plaintiff dated the 1st of November, 1930, for a term commencing November 15, 1930, and expiring September 30, 1932.

Prior to August 1, 1931, the defendant vacated the premises.

The plaintiff, as the landlord, sues on the lease for rent for the months of August, September, October and November, 1931.

The tenant now claims that she "was forced to move from the said premises prior to August 1, 1931, due to the boisterous and loud noises and offensive conduct on the part of other tenants in the building" and because she "was stopped in the corridors of this building by men" whom she did not know, and on other

occasions was "absolutely prevented from sleeping due to the conduct of the people in the adjoining apartment;" further asserting that "nothing was done with regard thereto" though she "continuously made objection of these matters to the management of the building."

It is the defendant's claim that these facts asserted by her constituted a breach of the covenant of quiet enjoyment and resulted in a constructive eviction.

Where the landlord leases the premises for the purpose and use which causes the complaint or where the tenant with the knowledge and acquiescence of the landlord uses the premises for immoral or illegal purposes, in either of such instances the landlord cannot completely deny responsibility.

But where the tenant leases and uses the premises for a private dwelling and it is the personal conduct of the tenant that constitutes the cause for complaint, a different situation is presented.

Statute has laid many obligations for the physical upkeep and the maintenance of a city multiple dwelling upon the shoulders of the owner and landlord; but it has not charged him with any absolute or exclusive responsibility for the noisy conduct of tenants or the wrongful actions of strangers.

The landlord controls his building, not his tenants.

And the right of a city apartment house dweller to a quiet-like fireside travels hand in hand with our present-day social amenities. One would scarcely seek out the heart of the great metropolis in search of real quiet. New York has no curfew for the home.

But to grant those that seek a reasonably quiet home a legitimate claim to it need not deny to others an equally legitimate desire to make their home the refined social rendezvous of the young and old of the family; all within reason.

Just where to draw the line between the privilege of one tenant to quiet peaceful occupancy, and the right of another to lively diversion, no legal postulate can arbitrarily determine.

In the quest for a solution one must be guided by a liberal regard for the relative and respective rights and tastes of the parties, the family personnel, and other varying features; and also a recognition of the customs common to our town and time.

What was yesterday's disturbing and offensive noise may become tomorrow's "Ballet Mechanique." "Even so, the test for all the senses, for sight as well as smell and hearing, has been the effect of the offensive practice upon the reasonable man or woman of average sensibilities." (*People* v. *Rubenfeld*, 254 N. Y. 245, at p. 248.)

New conditions, new customs, new inventions, affect their changes

in the working and application of ancient rules of guidance. But they do not dispense with certain elements vital to a constructive eviction.

"Anciently, nothing short of an actual expulsion operated an eviction; but *in modern times the rule has been liberalized in favor of the tenant;* and now any intentional and injurious interference by the landlord with the beneficial enjoyment of the premises will discharge the tenant from his obligation for the rent. *The interruption, however, must be the work of the landlord, and he is not responsible for the misconduct of third parties.*

" The defense, in this case, turns on the point, whether the landlord be implicated in the establishment or continuance of a bawdy house in the basement of the demised premises. *If he is not instrumental either in the creation or continuance of the nuisance, the plea of eviction is without support.* (*Gilhooley* v. *Washington,* 4 N. Y. [4 Comst.] 217.) *A mere omission on his part to abate the nuisance has never been held an answer to an action for rent.* (*Gilhooley* v. *Washington, supra; Mortimer* v. *Brunner,* 6 Bosw. 653; *Ogilvie* v. *Hull,* 5 Hill, 52.)

"*An eviction, whether physical or moral, necessarily implies some affirmative misconduct on the part of the landlord (Cohen* v. *Dupont,* 1 Sandf. 260; *Cram* v. *Dresser,* 2 id. 120); and such is the doctrine even in *Pendleton* v. *Dyet* (8 Cow. 727)." (*Townsend* v. *Gilsey,* 7 Abb. Pr. [N. S.] 59, at p. 63.) (Italics mine.)

The expression " noisy conduct " may sound like the antithesis to " quiet enjoyment; " but the law of constructive eviction does not rest upon such firm impressions. " Under such a clause the landlord is not bound to re-enter and expel a tenant for the benefit of another tenant. There is no such condition expressed in the lease and if the defendant herein desired to rely upon any such stipulation, she should have had it inserted therein. Neither has it ever been held that acts done by one tenant without the authority, consent or connivance of the landlord can be treated by another tenant as constituting an eviction." (*Sefton* v. *Juilliard,* 46 Misc. 68, at p. 70.)

Consonant with these holdings we find the Appellate Division ruling: " The authorities, we believe, are uniform in holding that eviction, by nuisance, must be by a nuisance created by, or due in some measure to, the landlord, in order to obviate the otherwise absolute duty of paying the rent in the manner provided by the contract." (*McKinny* v. *Browning,* 126 App. Div. 370, at p. 371.)

" To constitute a constructive eviction, there must be an intentional and injurious interference by the landlord, which deprives a tenant of the beneficial enjoyment of the demised premises, or

materially impairs such beneficial enjoyment. * * * An eviction cannot be predicated on acts or conduct, however wrongful or distressing, unless committed, encouraged or connived at by the landlord. He is not responsible for the conduct of other tenants acting within their rights in their own apartments. If defendant's grievance was a substantial one, he could secure redress, not against his landlord, but against the offending tenant in the premises above." (*Seaboard Realty Co.* v. *Fuller*, 33 Misc. 109.)

For even where the landlord might have the right to terminate the lease because of a tenant's noisy and boisterous conduct, his failure to exercise such a privilege would not necessarily support the claim of constructive eviction. (See *Sefton* v. *Juilliard, supra.*)

Aside from the conflicting rights of the tenants of the same multiple dwelling, we have the question of the landlord's rights and remedies.

For the defendant's claim to a constructive eviction rests upon the landlord's dereliction. The landlord's dereliction depends upon his duty, and his duty in turn depends upon his right to interfere with any tenant's full enjoyment of his particular demised premises and the appurtenances.

In this connection one is mindful that in instances like those here complained of, no tenant is himself completely without redress and remedy.

To what extent the tenant must himself act, or whether he may look independently to the landlord for action, are problems that need not now be determined.

At first blush, therefore, the facts submitted might not seem sufficient to constitute the defense pleaded.

Counsel for the defendant has submitted a *per curiam* opinion of the Appellate Term, reading as follows: " The uncontradicted evidence authorizing a finding by the jury that the conduct of the overhead tenant tended to deprive the defendant of the beneficial enjoyment of the demised premises, and that nothing was done by the landlord to stop the objectionable conduct of the co-tenant, it was error to set aside the verdict." (See *Levine & Rosen* v. *Hence*, Appellate Term, First Department, Nov. 12, 1931; leave to appeal denied by Appellate Division, First Department, N. Y. L. J. Jan. 26, 1932.)

In view of this holding by our court of review, one doubts the clarity and conclusiveness of the decisions of the past.

However, the Appellate Term decision apparently rests upon a necessity born of the particular conditions presented in that case, rather than upon the conclusiveness of any precise precedent.

The defendant's affidavit, submitted in opposition to this motion, is not specific. If there are facts justifying the tenant's complaint

and laying responsibility at the door of the landlord, they should be set forth with certainty, not left to generalities.

The landlord, on the other hand, has counted exclusively upon the insufficiency of the defense as a matter of law, submitting no supporting affidavit on any issue of fact.

The court will, therefore, at this time deny the motion without prejudice, venturing the suggestion that the defendant serve a bill of particulars covering the particulars alluded to so that a further application, based upon a full presentment by the landlord and the tenant, may be made.