CICOTTE v. DAMRON.

1. Officers—Tenure.
   One does not have a contract right to a public office.

2. Same—Abolition of Office.
   A public office is taken subject to the contingency that it may be abolished lawfully.

3. Municipal Corporation—Police and Fire Commission—Organization of Department.
   A home-rule city's police and fire commission, empowered by the charter to adopt rules and regulations for the organization and conduct of the police and fire departments and for the rank of the members of the 2 departments, had the power to abolish the rank of "assistant chief of police," create the office of "inspector" with rank next to the chief of police and make it directly answerable to the chief instead of to the commission (Ecorse Charter, ch 6, §§ 19, 20, 23).

4. Same—Home-Rule City—Administrative Law.
   It is not for the Supreme Court to substitute its judgment for that of the police and fire commission of a home-rule city as to the motives in making changes in rules and regulations or deciding administrative policies.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 42 Am Jur, Public Officers § 33.
[3, 4] 37 Am Jur, Municipal Corporations § 227.
[4] 37 Am Jur, Municipal Corporations § 172.
[5] 37 Am Jur, Municipal Corporations § 187 et seq.

5. CONSTITUTIONAL LAW—COURTS—ADMINISTRATIVE LAW.
    Judicial usurpation of the functions of an administrative body
        is forbidden by the Constitution (Const 1908, art 4).

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted January 13, 1956. (Docket No. 76, Calendar No. 46,458.) Decided May 14, 1956.

Quo warranto by John Cicotte against Woodrow Damron to test right of latter to hold position as inspector in Ecorse police department. Judgment for plaintiff. Defendant appeals. Reversed and dismissal of information ordered to enter.

*Philip J. Neudeck,* for plaintiff.

*Edward N. Barnard,* for defendant.

BOYLES, J. Plaintiff filed an information in the nature of quo warranto in the circuit court for Wayne county to test the right of the defendant to hold the office of "inspector" in the police department of the city of Ecorse in said county. The circuit judge who heard the matter, after taking much testimony, entered an order ousting the defendant from the office of "assistant chief" of said police department and the defendant appeals.

In the information filed and in the order of ouster entered the office in question is referred to as being second in "rank" or "command" in said department.

On January 14, 1954, and for some time prior to that date, the plaintiff held the office of "assistant chief" of said police department. On that date the police and fire commission of said city changed the rules governing the department of police, and as the result the plaintiff was notified that his rank of assistant chief of the police department had been abolished and that he was transferred to the uniform

division as lieutenant, with no change in salary. The same communication informed him that the office of inspector had been created, to be No 2 in order of rank in the department. Thereupon plaintiff filed the instant petition to test the right of the defendant, who was promoted to the office of inspector, to hold an office "second in rank" in the department.

The substance of plaintiff's claim is that the commissioners merely changed the name of the office, from assistant chief to inspector, without any change in duties or authority. The defendant claims that the police and fire commission had the legal authority, under the city charter and the regulations of the department, to abolish the office of assistant chief, to establish the office of the inspector, change the powers and duties of said office, and to place the inspector in second rank in the department; that the commission had done so, had appointed the defendant as inspector, and that there was no longer an office of assistant chief to which plaintiff could be restored.

Despite much testimony taken tending to confuse the real issue, the legal question remains the same: Did the police and fire commission have authority to abolish the office of assistant chief of the department, create the office of inspector, change the powers and duties of said office, and place the incumbent of that office second in rank and command, in the department?

At the outset in considering the matter, it should be noted that another phase of the dissension evident in the municipal affairs of Ecorse, in connection with the powers and authority of the police and fire commission, was recently before this Court in *Royal* v. *Ecorse Police & Fire Commission,* 345 Mich 214, decided April 2d of this year. In that case decision turned on the question whether the commission, acting as a trial board in holding a hearing, under a

provision in the city charter authorizing the commission to discipline or discharge a member of the department, had afforded Alvin Royal a proper hearing and opportunity to be heard. The hearing resulted in an order by the commission demoting Royal from chief of police to lieutenant, although only 4 of the 5-member commission had sat as a board to hear and decide the matter. Two of those 4 members were the only witnesses sworn; and they testified against Royal. Then they acted as members of the board of police and fire commissioners in deciding the matter. This Court held that Royal did not receive a fair and impartial trial and affirmed the trial court which had set aside the proceedings. The difference between that case and the present situation is plain. In the instant case there was no occasion to have such a hearing, under the charter. The plaintiff was not charged with misfeasance, nonfeasance or malfeasance in office. The question here is whether the commission had the authority to abolish the office of assistant chief of police, change the powers and duties of that office, and create the rank of inspector.

Applicable to the instant case, the city charter provides:

"There is hereby created in the department of public safety a police and fire commission which shall consist of 5 members. * * * The police and fire commission shall have general control and management of the police department and fire department. * * * The commission shall adopt rules and regulations for the organization and conduct of the police and fire departments, for the rank of the members of the police and fire forces, and for punishment for breaches of discipline or violations of rules and regulations."*

---

* Chapter 6, §§ 19, 20, 23.

Pursuant to the foregoing charter authority, the police and fire commission adopted rules and regulations, which were amended on January 14, 1954. The rank of assistant chief of police was abolished and the office of inspector was created, to rank next to the chief of police in command of the department. Plaintiff claims that this merely changed the name of the "second in command" from assistant chief to inspector, was not in good faith, was for political purposes, and that it left plaintiff still in office as the assistant chief of police. The defendant claims that the commission had the authority to appoint an "inspector" as the "second in command," with new duties, and to eliminate the rank of assistant chief of police.

Prior to the change, section 9 of the rules and regulations of the department stated the duties and powers of the assistant chief of police as follows:

"The assistant chief of police shall report direct to the chief of police and assist him in the execution of his office and shall have such powers and perform such other duties as the chief from time to time may direct.

"He shall, in the absence of the chief, act in his stead and during such absence shall possess all the powers of the chief in the conduct of the business of the department and in carrying out the orders and policies of the chief, and shall not alter, revise or countermand such orders or policies except in case of emergency.

"He shall exercise supervision over the routine work of the office of the chief, receive the morning reports of the lieutenants and all other reports forwarded to the office and shall refer to the chief all matters of importance requiring his attention.

"He shall receive all complaints, particularly complaints of citizens, and by appropriate reference to the police and fire commission, commanding officers,

or otherwise, as the importance of the matter may demand, give prompt and efficient action thereon.

"So that the time of the chief may not be taken up by matters of comparatively small importance, he shall take complaints and give such information as may be desired upon police questions and to act on, or dispose of them, in accordance with the policies of the chief."

On January 14, 1954, when the change was made in the rules and regulations, section 9 was eliminated and a new section 9 was adopted which reads as follows:

"Inspector. The inspector shall be in charge of all divisions of the police department and shall perform such other duties as the chief may from time to time direct."

The important change in the duties thus made by the change in Rule 9 was to leave out defining specifically the duties of the "assistant chief," and to make the inspector directly answerable to the chief of police "as the chief may from time to time direct." Prior thereto, the duties of the assistant chief had been outlined in some detail, answerable to the commission. The change made the inspector directly accountable to the chief of police, and the chief directly responsible for the performance of his duties by the inspector. The inspector was put in charge of all divisions, answerable to the chief, "as the chief may * * * direct." Prior thereto, the assistant chief of police was in charge of the uniform division but not of the detective bureau. Under the new rule, the inspector was not authorized to act as chief, in the absence of the latter; the specific powers and duties of the "assistant chief" were eliminated and the "second in command" was subjected to the orders of the chief. The reasons for, or extent to which these changes were important in

police work, do not fully appear in the record, although plaintiff claims that it was for political purposes. Obviously the new rules diminished the express duties and authority of the second in command, and to the same extent increased the authority of the chief of police.

Did the commission have the authority to abolish the office of assistant chief?

"In this State one does not have a contract right to an office. The office is taken subject to the contingency that it may be abolished lawfully." *Sprister* v. *City of Sturgis,* 242 Mich 68, 72 (quo warranto to test the right to abolish the office of city commissioner).

In *Attorney General* v. *Guy,* 334 Mich 694, quo warranto to test the right of a city to abolish the office of municipal judge, this Court held (syllabi):

"Public offices may be abolished and no office holder has a contractual right thereto.

"Defendant in quo warranto proceedings, brought by the attorney general, who had been municipal judge in a home-rule city, occupying an office lawfully abolished by charter amendment, *held,* without right to office of municipal judge."

Under the charter, plaintiff's office as assistant chief was subject to termination by the commission; the commission had the authority to create the office of inspector, second in command of the department, change the duties of that office, and abolish the office of assistant chief of police. There is now no office of assistant chief of police in the department in which the plaintiff can be reinstated, as ordered by the trial court.

The evident purpose of the plaintiff in offering the lengthy testimony in the record was to show that the commission acted in bad faith, actuated by political motives. However that may be, the municipal

police and fire commission acted within its powers and authority, under the charter, and it is not for the Court to substitute its judgment for that of the commission as to its motives in making the changes in the rules and regulations.   The Court does not decide administrative policies.

"The determination of facts and the propriety of action of administrative boards is not a judicial function.

"Judicial usurpation of the functions of an administrative body is forbidden by the Constitution (Const 1908, art 4).

"On appeal in nature of certiorari the reviewing court does not determine administrative policies nor purely administrative questions.

"Circuit judge acted without jurisdiction where he sought by hearing *de novo* to substitute his judgment for that of a county civil service commission in the discharge of its function of fixing classified county employee's classification and his compensation (PA 1941, No 370)." *Bischoff* v. *County of Wayne* (syllabi), 320 Mich 376.

It should again be noted that the question here is as to the legal authority of the commission to take the steps here under attack, to change its rules.   Had the commission chosen to apply other provisions of the city charter, and to discharge the plaintiff after formal complaint and a hearing by the commission as a trial board, as in the *Royal Case, supra,* and to appoint the defendant "assistant chief" in his place, the voluminous testimony in this record as to the motives of the board of commissioners offered by the plaintiff might be more in point.*   The plaintiff was not discharged.   His office was terminated.

---

* See *Wellman* v. *Board of Metropolitan Police of the City of Detroit,* 84 Mich 558; *Mapley* v. *City of Pontiac,* 288 Mich 396.

Reversed for entry of an order dismissing plaintiff's information in quo warranto. Costs to appellant.

DETHMERS, C. J., and SHARPE, SMITH, KELLY, CARR, and BLACK, JJ., concurred.

The late Justice REID took no part in the decision of this case.