373 P.2d 809

**CONTINENTAL OIL COMPANY, Amerada Petroleum Corporation, Pan American Petroleum Corporation, Shell Oil Company, The Atlantic Refining Company, Standard Oil Company of Texas, and Humble Oil & Refining Company, Petitioner-Appellants and Cross-Appellees,**

v.

**OIL CONSERVATION COMMISSION, Respondent-Appellee and Cross-Appellant,**

**Texas Pacific Coal & Oil Company, a Foreign Corporation, El Paso Natural Gas Company, a Foreign Corporation; Permian Basin Pipeline Company, a Foreign Corporation, and Southern Union Gas Company, a Foreign Corporation, Respondents-Appellees.**

No. 6830.

Supreme Court of New Mexico.

May 16, 1962.

Rehearing Denied Aug. 20, 1962.

Atwood & Malone, Hervey, Dow & Hinkle, Roswell, Kellahin & Fox, Santa Fe, for appellants.

Hilton A. Dickson, Jr., Atty. Gen., Oliver E. Payne, Sp. Asst. Atty. Gen., Santa Fe, for appellee and cross-appellant.

Campbell & Russell, Roswell, for Texas Pacific Coal & Oil Co.

Ray C. Cowan, Hobbs, Hardie, Grambling, Sims & Galatzan, El Paso, Tex.; for El Paso Natural Gas Co.

Robert W. Ward, Lovington, for Permian Basin Pipeline Co.

CARMODY, Justice.

Appellants seek to reverse the judgment of the district court, which, on appeal, affirmed a contested order by the appellee commission.

Appellants are seven of the producers of natural gas in the Jalmat Pool, and the appellees, in addition to the Oil Conservation Commission, consist of one of the producers in the same field and three pipeline companies which take gas from the field. The Oil Conservation Commission, as appellee, is also a cross-appellant on a question which will later be discussed.

The law creating the Oil Conservation Commission was originally enacted as Ch. 72, Sess.Laws of 1935, which, as amended, is now § 65–3–2 et seq., N.M.S.A.1953. It is a compliment to the members of the commission and the industry that, throughout the years, this is the first case to reach this court concerning the merits of any controversy determined by the commission. The parties were, however, before us in State ex rel. Oil Conservation Commission v. Brand, 1959, 65 N.M. 384, 338 P.2d 113, wherein the appellees sought, in an original action, to prohibit the trial court from receiving additional evidence other than that which had been considered by the commission. Upon our denial of pro-

hibition, the trial court considered the record before the commission, heard additional evidence, and confirmed the commission's order. The trial court, at the time of the trial, prohibited the appellee—cross-appellant commission from participating as an adverse party, and this is the subject of the cross-appeal.

In 1954, the commission prorated the Jalmat Pool in Lea County, New Mexico. At that time, the natural gas allowables for the individual wells were determined by the use of the "pure acreage" formula. Under such a system, each producer is allowed to produce his portion of the total allowable, based upon the acreage of his tract as compared to the total acreage overlying the pool or gas reservoir. In January 1958, following the application of appellee, Texas Pacific Coal & Oil Company, seeking termination of proration, or, alternatively, a change of the gas proration formula, the commission held a hearing, as a result of which it determined to continue proration but did grant the change of the formula. Order No. R–1092–A was issued by the commission, which directed that the method of computing allowables in the Jalmat Pool should be changed to one based upon 25% acreage and 75% deliverability. Appellants sought a rehearing and, at its conclusion, the commission affirmed Order No. R–1092–A by Order No. R–1092–C. The appeal to the district court and here followed, under the provisions of § 65–3–22(b), N.M.S.A. 1953 Comp.

It should be observed at this time that, although the appeal under the statute must be from the order entered by the commission on rehearing, actually the commission, with one minor change, merely affirmed its original order and declared that the same should remain in full force and effect. Therefore, from a practical standpoint, it is the validity of Order No. R–1092–A that is in issue.

Appellants urge that the order of the commission is unlawful and unreasonable in depriving appellants of their property without due process of law, in that: (1) The order does not rest upon an authorized statutory basis; (2) the order is not supported by substantial evidence; and (3) the order is incomplete, vague and indefinite.

For clarity, we hereinafter quote the statutes, or portions thereof, with which we are concerned on this main appeal:

"65–3–2. Waste prohibited.—The production or handling of crude petroleum oil or natural gas of any type or in any form, or the handling of products thereof, in such manner or under such conditions or in such amounts as to constitute or result in waste is each hereby prohibited.

"65–3–3. Waste—Definitions.—As used in this act the term 'waste,' in ad-

dition to its ordinary meaning, shall include:

" * * * * * *

"(e) The production in this state of natural gas from any gas well or wells, or from any gas pool, in excess of the reasonable market demand from such source for natural gas of the type produced or in excess of the capacity of gas transportation facilities for such type of natural gas. The words 'reasonable market demand,' as used herein with respect to natural gas, shall be construed to mean the demand for natural gas for reasonable current requirements, for current consumption and for use within or outside the state, together with the demand for such amounts as are necessary for building up or maintaining reasonable storage reserves of natural gas or products thereof, or both such natural gas and products.

" * * * * * *

"65–3–5. Commission's powers and duties.—The commission shall have, and it is hereby given, jurisdiction and authority over all matters relating to the conservation of oil and gas in this state, and of the enforcement of all the provisions of this act, and of any other law of this state relating to the conservation of oil or gas. It shall have jurisdiction and control of and over all persons, or things necessary or proper to enforce effectively the provisions of this act or any other law of this state relating to the conservation of oil or gas.

" * * * * * *

"65–3–10. Power of commission to prevent waste and protect correlative rights.—The commission is hereby empowered, and it is its duty, to prevent the waste prohibited by this act and to protect correlative rights, as in this act provided. To that end, the commission is empowered to make and enforce rules, regulations and orders, and to do whatever may be reasonably necessary to carry out the purposes of this act, whether or not indicated or specified in any section hereof.

" * * * * * *

"65–3–13. Allocation of allowable production in field or pool.—* * *

" * * * * * *

"(c) Whenever, to prevent waste, the total allowable natural gas production from gas wells producing from any pool in this state is fixed by the commission in an amount less than that which the pool could produce if no restrictions were imposed, the commission shall allocate the allowable production among the gas wells in the pool delivering to a gas transportation facility upon a reasonable basis and recognizing correlative rights, and shall include

in the proration schedule of such pool any well which it finds is being unreasonably discriminated against through denial of access to a gas transportation facility which is reasonably capable of handling the type of gas produced by such well. In protecting correlative rights the commission may give equitable consideration to acreage, pressure, open flow, porosity, permeability, deliverability and quality of the gas and to such other pertinent factors as may from time to time exist, and in so far as is practicable, shall prevent drainage between producing tracts in a pool which is not equalized by counter-drainage. In allocating production pursuant to the provisions of section 12(c) the commission shall fix proration periods of not less than six [6] months. It shall determine reasonable market demand and make allocations of production during each such period, upon notice and hearing, at least 30 days prior to the beginning of each proration period. In so far as is feasible and practicable, gas wells having an allowable in a pool shall be regularly produced in proportion to their allowables in effect for the current proration period. * * *

"* * * * * *

"65–3–14. Equitable allocation of allowable production—Pooling—Spacing. —(a) The rules, regulations or orders of the commission shall, so far as it is practicable to do so, afford to the owner of each property in a pool the opportunity to produce his just and equitable share of the oil or gas, or both, in the pool, being an amount, so far as can be practically determined, and so far as such can be practicably obtained without waste, substantially in the proportion that the quantity of the recoverable oil or gas, or both, under such property bears to the total recoverable oil or gas or both in the pool, and for this purpose to use his just and equitable share of the reservoir energy.

"(b) The commission may establish a proration unit for each pool, such being the area that can be efficiently and economically drained and developed by one [1] well, and in so doing the commission shall consider the economic loss caused by the drilling of unnecessary wells, the protection of correlative rights, including those of royalty owners, the prevention of waste, the avoidance of the augmentation of risks arising from the drilling of an excessive number of wells, and the prevention of reduced recovery which might result from the drilling of too few wells.

"* * * * * *

"(f) After the effective date of any rule, regulation or order fixing the allowable production, no person shall

produce more than the allowable production applicable to him, his wells, leases or properties determined as in this act provided, and the allowable production shall be produced in accordance with the applicable rules, regulations or orders.

"65–3–15. Common purchasers—Discrimination in purchasing prohibited.— * * *

" * * * * * *

"(e) Any common purchaser taking gas produced from gas wells from a common source of supply shall take ratably under such rules, regulations and orders, concerning quantity, as may be promulgated by the commission consistent with this act. The commission, in promulgating such rules, regulations and orders may consider the quality and the deliverability of the gas, the pressure of the gas at the point of delivery, acreage attributable to the well, market requirements in the case of unprorated pools, and other pertinent factors.

" * * * * * *

"65–3–29. Definitions of words used in act.— * * *

" * * * * * *

"(h) 'Correlative rights' means the opportunity afforded, so far as it is practicable to do so, to the owner of each property in a pool to produce without waste his just and equitable share of the oil or gas, or both, in the pool, being an amount, so far as can be practically determined, and so far as can be practicably obtained without waste, substantially in the proportion that the quantity of recoverable oil or gas, or both, under such property bears to the total recoverable oil or gas, or both, in the pool, and for such purpose to use his just and equitable share of the reservoir energy."

(The similarity of this section and § 65–3–14(a) is to be noted, although not of consequence to this decision.)

(It is also of interest, although not determinative, that the original act (Ch. 72, Laws 1935) was bottomed almost entirely upon the theory of prevention of waste, and it was not until the passage of Ch. 168, Laws 1949, that the legislature saw fit in the various sections, some of which are set out above, to add the language relating to the protection of "correlative rights" and to define the term.)

The order of the commission was based upon certain findings, only the following of which relate to the controversy in issue:

"(5) That the applicant has proved that there is a general correlation between the deliverabilities of the gas wells in the Jalmat Gas Pool and the [recoverable] gas in place ·under the tracts dedicated to said wells, and that

the inclusion of a deliverability factor in the proration formula for the Jalmat Gas Pool would, therefore, result in a more equitable allocation of the gas production in said pool than under the present gas proration formula." (The word "recoverable" in brackets above is the only change made by the Commission by its affirmatory Order No. R–1092–C.)

"(6) That the inclusion of a deliverability factor in the proration formula for the Jalmat Gas Pool will result in the production of a greater percentage of the pool allowable, and that it will more nearly enable the various gas purchasers in the Jalmat Gas Pool to meet the market demand for gas from said pool.

"(7) That the allowable gas production in the Jalmat Gas Pool should be allocated to the non-marginal wells in said pool in accordance with a proration formula based on seventy-five per cent (75%) acreage times deliverability plus twenty-five per cent (25%) acreage only."

We have not overlooked the commission's Finding No. 3, which is the only one mentioning "waste," but this particular finding related to the commission's refusal to terminate proration in the pool, and, in context, did not apply to the method of computing allowables.

■ Proceeding to appellants' argument that the order does not rest upon an authorized statutory basis, it should be initially recognized that an administrative body may be delegated the power to make fact determinations to which the law, as set forth by the legislative body, is to be applied. See, Opp Cotton Mills v. Administrator, 1941, 312 U.S. 126, 657, 61 S.Ct. 524, 85 L.Ed. 624, in which it is said:

"The essentials of the legislative function are the determination of the legislative policy and its formulation as a rule of conduct. Those essentials are preserved when Congress specifies the basic conclusions of fact upon ascertainment of which, from relevant data by a designated administrative agency, it ordains that its statutory command is to be effective."

■ The Oil Conservation Commission is a creature of statute, expressly defined, limited and empowered by the laws creating it. The commission has jurisdiction over matters related to the conservation of oil and gas in New Mexico, but the basis of its powers is founded on the duty to prevent waste and to protect correlative rights. See, § 65–3–10, supra. Actually, the prevention of waste is the paramount power, inasmuch as this term is an integral part of the definition of correlative rights.

■ The commission was here concerned with a formula for computing al-

lowables, which is obviously directly related to correlative rights. In order to protect correlative rights, it is incumbent upon the commission to determine, "so far as it is practical to do so," certain foundationary matters, without which the correlative rights of the various owners cannot be ascertained. Therefore, the commission, by "basic conclusions of fact" (or what might be termed "findings"), must determine, insofar as practicable, (1) the amount of recoverable gas under each producer's tract; (2) the total amount of recoverable gas in the pool; (3) the proportion that (1) bears to (2); and (4) what portion of the arrived at proportion can be recovered *without waste*. That the extent of the correlative rights must first be determined before the commission can act to protect them is manifest.

The practical necessity for findings such as those mentioned is made evident, under the provisions of § 65–3–14(b) and (f) (pertaining to allocation of allowable production) and § 65–3–29(h) (defining "correlative rights"). Additionally, it should be observed that the commission, "in so far as is practicable, shall prevent drainage between producing tracts in a pool which is not equalized by counter-drainage," under the provisions of § 65–3–13 (c).

The findings and conclusions of the commission, contained in the order complained of, lack any mention of any of the above factors. The commission made no finding as to the amounts of recoverable gas in the pool, or under the various tracts; it made no finding as to the amount of gas that could be practicably obtained without waste; it made no finding concerning drainage; it made no finding that correlative rights were not being protected under the old formula, or at least that they would be better protected under the new formula. There is no indication that the commission attempted to do any of these things, even to the extent of "insofar as is practicable."

All of the above factors were in issue before the commission, and are on appeal because they were all raised in the appellants' application for rehearing.

We will assume that the former "pure acreage" formula is valid until it is successfully attacked. Hester v. Sinclair Oil & Gas Company (Okl.1960), 351 P.2d 751. The attack in the instant case has failed. The commission made no finding, even "insofar as can be practically determined," as to the amounts of recoverable gas in the pool or under the tracts. How, then, can the commission *protect* correlative rights in the absence of such a finding?

"However, simply stated, plaintiffs are adversely affected by an order which failed to include a finding of the jurisdictional fact upon which its

**320**

issuance is conditioned by the legislature, and the issuance of which order plaintiffs opposed in the preceding hearing on the ground that the Commissioner had no power to issue same. For the order is not valid; and in this instance does not negative the 'net drainage' and loss of their 'just and equitable share' of production which plaintiffs claim its issuance will cause them, and which jurisdictional facts were requisites to the validity of the order." Hunter v. Hussey (La.App. 1956), 90 So.2d 429, 441.

 Referring to the commission's finding No. 5, part of which is to the effect that the new formula will result in a "more equitable allocation of the gas production in said pool than under the present gas proration formula," we do not believe it is a substitute for, nor the equivalent of, a finding that the present gas proration formula does not protect correlative rights. Further, that portion of the same finding that there is a "general correlation between the deliverabilities of the gas wells in the Jalmat Gas Pool and the recoverable gas in place under the tracts dedicated to said wells" is not tantamount to a finding that the new formula is based on the amounts of recoverable gas in the pool and under the tracts, insofar as these amounts can be practically determined and obtained without waste. Lacking such findings, or their equivalents, a

supposedly valid order in current use cannot be replaced. Such findings are necessary requisites to the validity of the order, for it is upon them that the very power of the commission to act depends. See, Hunter v. Hussey, supra; and Hester v. Sinclair Oil & Gas Company, supra.

 In considering finding No. 6, the record of the commission furnishes us nothing upon which to base an assumption that the finding relates to the prevention of waste, or to the protection of correlative rights. We find no statutory authority vested in the commission to require the production of a greater percentage of the allowable, or to see to it that the gas purchasers can more nearly meet market demand *unless such results stem from or are made necessary by the prevention of waste or the protection of correlative rights.*

When § 65–3–13(c) and § 65–3–15(e) are read together, one salient fact is evident —even after a pool is prorated, the market demand must be determined, since, if the allowable production from the pool exceeds market demand, waste would result if the allowable is produced. See, § 65–3–3(e), supra. Conversely, production must be limited to the allowable even if market demand exceeds that amount, since the setting of allowables was made necessary in order to prevent waste. See, § 65–3–13(c), supra. The reason for the consideration of market requirements in the case of unprorated pools is self-evident,

and needs no discussion. From what has been said, it is obvious that the commission's finding that the enabling of gas purchasers to more nearly meet the market demand is not an authorized statutory basis upon which a change of allowables may be placed. The same is true of the finding as to "the production of a greater percentage of the pool allowable" and for the same reasons.

▆▆▆▆▆ We therefore find that the order of the commission lacked the basic findings necessary to and upon which jurisdiction depended, and that therefore Order No. R–1092–C and Order No. R–1092–A are invalid and void. We would add that although formal and elaborate findings are not absolutely necessary, nevertheless basic jurisdictional findings, supported by evidence, are required to show that the commission has heeded the mandate and the standards set out by statute. Administrative findings by an expert administrative commission should be sufficiently extensive to show not only the jurisdiction but the basis of the commission's order. See, City of Yonkers v. United States, 1944, 320 U.S. 685, 64 S.Ct. 327, 88 L.Ed. 400, wherein it is stated:

"The insistence that the Commission make these jurisdictional findings * * * gives to the reviewing courts the assistance of an expert judgment on a knotty phase of a technical subject."

We have carefully examined and considered the various authorities cited by the parties, other than those herein specifically discussed, and find them to be either not in point or having been decided under different statutes and constitutional provisions, and, where conflicting, we decline to follow the reasoning thereof. Having reached this conclusion, there is no necessity for any discussion or consideration of the other points raised by appellants.

We have intentionally omitted any mention of the findings and conclusions of the trial court, because of our disposition of the cross-appeal. In so deciding, it is necessary to explain the circumstances in the trial court.

Appellants filed their application for appeal from the commission's orders; the commission filed its response, as did the other appellees, all but one of whom merely adopted the response filed by the commission. Thereafter, two pretrial conferences were held, at which point the appellee commission brought the original prohibition case in this court, seeking to prevent the taking of any additional evidence by the trial court. See, State v. Brand, supra. Our decision, refusing to rule at that time on the propriety of taking additional evidence, returned the case to the trial court. Thereafter, at the commencement of the actual trial, appellants moved that the commission be prohibited from participating as an adverse party,

because the sole question in the case related to the correlative rights of the owners of wells in the pool and that waste was not in issue. The attorney for the commission objected, saying that waste was in issue and that also the commission was an adverse party whenever its decision is appealed. The court sustained appellants' motion, but allowed counsel for the commission to remain in court, somewhat as an observer.

 It is this ruling that is the subject of the cross-appeal. However, the disposition of the question raised must of necessity include consideration of the scope of review upon appeal from the Oil Conservation Commission, inasmuch as the function of the commission, i. e., whether administrative or quasi-judicial, is all-important, because, if administrative, the authorities generally hold that, where the public interest is involved, such body is a proper party in the appeal to the court. See, Plummer v. Johnson, 1956, 61 N.M. 423, 301 P.2d 529. In addition, the question of the constitutional division of powers must be considered relative to the admission of testimony in the court, which was not offered before the administrative body. Thus, we must dispose of the question raised in State v. Brand, supra, as allied to the problem on cross-appeal, even though neither of the parties has presented the question, apparently because each opposing party is relying, at least in part,

upon the evidence which was introduced in the trial court.

The appeal statute, § 65-3-22(b), N.M. S.A. 1953 Comp., insofar as material, reads as follows:

"Any party to such rehearing proceeding, dissatisfied with the disposition of the application for rehearing, may appeal therefrom to the district court of the county * * *. Provided, however, that the questions reviewed on appeal shall be only questions presented to the commission by the application for rehearing. Notice of such appeal shall be served upon the adverse party or parties and the commission in the manner provided for the service of summons in civil proceedings. The trial upon appeal shall be de novo, without a jury, and the transcript of proceedings before the commission, including the evidence taken in hearings by the commission, shall be received in evidence by the court in whole or in part upon offer by either party, subject to legal objections to evidence, in the same manner as if such evidence was originally offered in the district court. The commission action complained of shall be prima facie valid and the burden shall be upon the party or parties seeking review to establish the invalidity of such action of the commis-

sion. The court shall determine the issues of fact and of law and shall, upon a preponderance of the evidence introduced before the court, which may include evidence in addition to the transcript of proceedings before the commission, and the law applicable thereto, enter its order either affirming, modifying, or vacating the order of the commission. In the event the court shall modify or vacate the order or decision of the commission, it shall enter such order in lieu thereof as it may determine to be proper. Appeals may be taken from the judgment or decision of the district court to the Supreme Court in the same manner as provided for appeals from any other final judgment entered by a district court in this state. * * *"

 It is apparent from a study of the entire act (§ 65–3–2 et seq., N.M.S.A. 1953 Comp., particularly § 65–3–10, supra) that the two fundamental powers and duties of the commission are prevention of waste and protection of correlative rights. The Supreme Court of Oklahoma had occasion to consider their statute, which is similar though not identical to ours, and in Choctaw Gas Co. v. Corporation Commission, (Okl.1956), 295 P.2d 800, said:

"And these two fundamental purposes of the exercise of the Commission's powers in proration matters are interrelated, for, if the State, through this or some other agency, could not protect such rights, and each owner of a portion of the gas in a natural reservoir was left to protect his own, we would have resort to the wasteful drilling practices and races of the preproration days."

 Our legislature has explictly defined both "waste" and "correlative rights" and placed upon the commission the duty of preventing one and protecting the other. Inasmuch as there is no express mention of prevention of waste in the commission's findings, insofar as they concern correlative rights, it is obvious that the order must have been principally concerned with protecting correlative rights. However, as we have said, certain basic findings must be made before correlative rights can be effectively protected. From a practical standpoint, the legislature cannot define, in cubic feet, the property right of each owner of natural gas in New Mexico. It must, of necessity, delegate this legislative duty to an administrative body such as the commission. The legislature, however, has stated definitively the elements contained in such right. It is not absolute or unconditional. Summarizing, it consists of merely (1) an opportunity to produce, (2) only insofar as it is practicable to do so, (3) without waste, (4) a proportion, (5) insofar as it can be practically determined and obtained without waste, (6) of the gas in the pool.

The prevention of waste is of paramount interest, and protection of correlative rights is interrelated and inseparable from it. The very definition of "correlative rights" emphasizes the term "without waste." However, the protection of correlative rights is a necessary adjunct to the prevention of waste. Waste will result unless the commission can also act to protect correlative rights. See, Choctaw Gas Co. v. Corporation Commission, supra. Although subservient to the prevention of waste and perhaps to the practicalities of the situation, the protection of correlative rights must depend upon the commission's findings as to the extent and limitations of the right. This the commission is required to do under the legislative mandate. As such, it is acting in an administrative capacity in following legislative directions, and not in a judicial or quasi-judicial capacity. The commission's actions are controlled by adequate legislative standards, and it is performing its functions to conserve a very vital natural resource.

To state the problem in a different way, if the commission had determined, from a practical standpoint, that each owner had a certain amount of gas underlying his acreage; that the pool contained a certain amount of gas; and that a determined amount of gas could be produced and obtained without waste; then the commission would have complied with the mandate of the statute and its actions would have been protecting the public interest, thereby, quite obviously, entitling it to defend, for the public, whatever order it issued. Thus, it should be obvious that the commission is a necessary adverse party, and it was error for the trial court to refuse to allow the commission to participate as such. Plummer v. Johnson, supra; Board of Adjustment of City of Fort Worth v. Stovall, 1949, 147 Tex. 366, 216 S.W.2d 171; and Hasbrouck Heights, etc. v. Division of Tax Appeals, 1958, 48 N.J.Super. 328, 137 A.2d 585. The owners are understandably concerned only with their own interests and cannot be expected to litigate anything except that which concerns them. Therefore, absent the commission, the public would not be represented. If the protection of correlative rights were completely separate from the prevention of waste, then there might be no need in having the commission as a party; but if such were true, it is very probable that the commission would be performing a judicial function, i. e., determining property rights, and grave constitutional problems would arise. For the same reason, it must follow that, just as the commission cannot perform a judicial function, neither can the court perform an administrative one. See, O'Meara v. Union Oil Co. of California, 1948, 212 La. 745, 33 So.2d 506; Fire Department of City v. City of Fort Worth, 1949, 147 Tex. 505, 217 S.W.2d 664; Bartkowiak v. Board of Supervisors,

1954, 341 Mich. 333, 67 N.W.2d 96; and Cicotte v. Damron, 1956, 345 Mich. 528, 77 N.W.2d 139. This is the net effect of the admission and consideration by the trial court of the additional evidence in this case. Such a procedure inevitably leads to the substitution of the court's discretion for that of the expert administrative body. We do not believe that such procedure is valid constitutionally. See, Johnson v. Sanchez, 1960, 67 N.M. 41, 351 P.2d 449, and the cases cited therein. Insofar as § 65–3–22(b), supra, purports to allow the district court, on appeal from the commission, to consider new evidence, to base its decision on the preponderance of the evidence or to modify the orders of the commission, it is void as an unconstitutional delegation of power, contravening art. III, § 1, of the New Mexico Constitution. In Johnson v. Sanchez, supra, we stated:

"It has long been the policy in the state of New Mexico, as shown by the various decisions of this court, that on appeals from administrative bodies the questions to be answered by the court are questions of law and are actually restricted to whether the administrative body acted fraudulently, arbitrarily or capriciously, whether the order was supported by substantial evidence, and, generally, whether the action of the administrative head was within the scope of his authority." (Citing cases.)

See, California Co. v. State Oil & Gas Board, 1946, 200 Miss. 824, 27 So.2d 542, 28 So.2d 120, which struck down a Mississippi statutory provision, insofar as it provided for a "trial de novo." A statement in the specially concurring opinion is especially pertinent:

"The essential nature of such a review is such that it must be of what the Board had before it at the time it made its order. It would be an incongruity as remarkable to permit another and different record to be made up on appeal to the circuit court as it would be to allow another and a different record to be presented to this Court on an appeal to it. The question is, and must be, what did the Oil and Gas Board have before it, and all this the majority opinion has well and sufficiently pointed out."

See, also, City of Meridian v. Davidson, 1951, 211 Miss. 683, 53 So.2d 48; Borreson v. Department of Public Welfare, 1938, 368 Ill. 425, 14 N.E.2d 485; and Household Finance Corp. v. State, 1952, 40 Wash.2d 451, 244 P.2d 260.

In the instant case, it is apparent that the trial court's decision to allow the additional testimony was in an effort to determine whether the commission had exceeded its delegated authority and, in effect, determined ownership of property. Such testimony, outside the record of that received by the commission, was not proper, and ad-

ditionally the over-all effect of allowing the same was to show the practical result of the workings of the formula, which were matters that were within the jurisdiction of the commission and not such as would warrant the court in substituting its judgment for that of the commission. The admission of testimony, relating to the conditions subsequent to the issuance of the order, has the net effect of negativing or minimizing the factual situation as it existed before the commission. Thus, instead of judicially passing upon the action of the commission, the court is also considering facts which did not even exist at the time of the original hearing. In doing so, the court must of necessity substitute its judgment on the merits for that of the commission, and this is not within its province.

■■■ The trial court, after hearing the testimony, and examining the testimony before the commission, felt that the new formula was preferable to the old "pure acreage" formula, thereby making a determination that the commission's order was proper. As to this, we express no opinion, because we are bound, as the trial court should have been, to dispose of the case upon the obvious illegality of the commission's order. Administrative bodies, however well intentioned, must comply with the law; and it is necessary that they be required to do so, to prevent any possible abuse.

We are fully cognizant that there is authority from other jurisdictions in conflict with the rule herein announced, particularly the decisions of the Texas courts; however, considering our own decisions and our statutes, we decline to follow the precedents in other jurisdictions, other than those cited.

It is apparent, from what has been said heretofore, that there was error, both on behalf of the commission and by the trial court. Ordinarily, the result would be to remand the case for another hearing before the trial court with the commission as an adverse party and the court merely considering whether the action of the commission was fraudulent, arbitrary or capricious, whether the order was supported by substantial evidence, and whether the action of the administrative body was within the scope of its authority. However, in this particular instance, we can conceive of no benefit which would result from such action, because there can be only one final conclusion based on the record before the commission, and that is that the order of the commission is void.

We are moved to finally dispose of the matter, and do not believe that the commission, as such, is prejudiced, inasmuch as its counsel was present during all of the proceedings in the trial court and participated in the appeal, to the extent at least of signing the briefs of appellees in addition to the brief as cross-appellant. We take the view that the commission and the public have been adequately represented and their view

of the case fully presented to the court. Thus, a remand would only amount to an unnecessary act and result in considerable additional delay.

The order of the district court, affirming the order of the Oil Conservation Commission, is reversed, with directions to set the same aside and enter an order sustaining appellants' appeal and declaring the orders of the commission No. R–1092–C and No. R–1092–A as invalid and void. IT IS SO ORDERED.

COMPTON, C. J., and CHAVEZ and NOBLE, JJ., concur.

MOISE, J., having recused himself, not participating.