THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v. DAVID RUBENFELD, Appellant.

(Argued June 9, 1930; decided July 8, 1930.)

*Walter A. Lynch* and *Hugo I. Epstein* for appellant. The evidence of the witnesses for the prosecution did not

establish the crime of maintaining a public nuisance. The evidence did not establish that the acts alleged in the information annoyed, injured or endangered the comfort, repose, health or safety of any considerable number of persons. (*People* v. *Kings Co. Iron Foundry*, 209 N. Y. 207; *People* v. *Cooper*, 200 App. Div. 413.) There is no evidence that the operation of Paramount Mansion resulted in annoyance or inconvenience to any person in a public place. Interference with people in the comfortable enjoyment of their homes may constitute a private nuisance, which does not become public merely because a considerable number may be so affected. (*People* v. *Transit Development Co.*, 131 App. Div. 174.) The judgment of conviction was contrary to the law and the evidence. (*Melker* v. *City of New York*, 190 N. Y. 481.)

Thomas C. T. Crain, District Attorney (Robert Daru of counsel), for respondent. The lawful business of running a catering establishment when three loud and large brass bands are permitted to play different tunes at once and until four o'clock in the morning, together with other avoidable and unnecessary noises, becomes a public nuisance where it annoys and disturbs a considerable number of people in their residences, and a considerable number of witnesses are not necessary to prove that a considerable number of persons were so annoyed, injured or endangered in their comfort, repose, health and safety. (*People* v. *Hess*, 110 Misc. Rep. 76; *Davis* v. *Sawyer*, 133 Mass. 289; *People* v. *Weeks*, 172 App. Div. 117; *Bohan* v. *Port Jervis Gas Light Co.*, 122 N. Y. 18.)

Cardozo, Ch. J. The defendant stands convicted of maintaining a public nuisance in the city of New York.

At the northwest corner of One Hundred and Eighty-third street and St. Nicholas avenue, a caterer, the Paramount Mansion Company, occupies a three-story

building for the uses of its business. The defendant is the manager. There are dances, weddings and other entertainments, one on each story, beginning in the evening and continuing till dawn. The sounds of revelry by night, to the accompaniment of drums and brasses, assail the quiet of the vicinage. Neighbors in the apartment houses to the right and to the left describe the tumult and the shouting with the disturbance of their sleep. A neighbor across the street bears witness to the same effect. A traveler on the highway heard the noise a block away. The district is a populous one in which many have their homes.

By the Penal Law of the State, an act which " annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons " is declared to be " a public nuisance," and punishable as a crime (Penal Law, § 1530; subd. 1). The definition corresponds to the distinction between public and private nuisances as it stood at common law (*People* v. *Kings County Iron Foundry*, 209 N. Y. 207, 210). To be reckoned as " considerable," the number of persons affected need not be shown to be " very great " (*People* v. *Kings County Iron Foundry*, *supra*). Enough that so many are touched by the offense and in ways so indiscriminate and general that the multiplied annoyance may not unreasonably be classified as a wrong to the community. Public is the nuisance whereby " a public right or privilege common to every person in the community is interrupted or interfered with," as by the obstruction of a public way (*Wesson* v. *Washburn Iron Co.*, 13 Allen, 95, 102). Public also is the nuisance committed " in such place and in such manner that the aggregation of private injuries becomes so great and extensive as to constitute a public annoyance and inconvenience, and a wrong against the community, which may be properly the subject of a public prosecution " (*Wesson* v. *Washburn Iron Co.*, *supra;* cf. Wood on Nuisances [2d ed.], § 71, and cases cited).

Long ago it was adjudged that one dwelling in a city who with the aid of a speaking trumpet made great noises in the night time to the disturbance of the neighborhood, must answer to the King (*Rex* v. *Smith*, [1726] 2 Strange, 704). The precedent is not one to be hastily renounced in days when trumpets have a power unknown to a simpler age. Public also was the nuisance where works were so conducted that the air became impregnated with " noisome stinks and smells " (*Rex* v. *White*, [1757] 1 Burrows, 333).

We have gone back to early days, but not for dearth of modern instances.

A piggery so maintained that " the occupation of the neighboring houses and passage over the adjacent highways " became " disagreeable, or worse " was stigmatized by HOLMES, J., as an indictable offense with copious references to precedents of early times and modern (*Commonwealth* v. *Perry*, 139 Mass. 198).

SHAW, Ch. J., thought the like of a fat rendering factory defiling the surrounding air. (*Commonwealth* v. *Brown*, 13 Metc. 365.)

The ruling was the same, and pronounced by the same court, when the annoyance was a public outcry (*Commonwealth* v. *Smith*, 6 Cush. 80; *Commonwealth* v. *Oaks*, 113 Mass. 8, 9).

The organs of smell and hearing, assailed by sounds and odors too pungent to be borne, have been ever favored of the law (cf. *Bohan* v. *Port Jervis Gaslight Co.* 122 N. Y. 18; *McCarty* v. *Natural Carbonic Gas Co.*, 189 N. Y. 40), more conspicuously, it seems, than sight, which perhaps is more inured to what is ugly or disfigured (*Woodstock Burying Ground Assn.* v. *Hager*, 68 Vt. 488). Even so, the test for all the senses, for sight as well as smell and hearing, has been the effect of the offensive practice upon the reasonable man or woman of average sensibilities (*Baltimore & Potomac R. R. Co.* v. *Fifth Baptist Church*, 108 U. S. 317). One of the unsettled

questions of the law is the extent to which the concept of nuisance may be enlarged by legislation so as to give protection to sensibilities that are merely cultural or æsthetic. The question need not be answered to decide the case at hand.

We think the area of this tumult, the range of its disturbing power, is wide enough to bring it within the category of an offense to the community, or so the triers of the facts might find. Here is something more than an interference with a single dwelling or even two or three. Here is tumult so great, if the witnesses are to be credited, as to be a plague to a whole neighborhood.

The judgment should be affirmed.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.