539 P.2d 221

**NEW MEXICO MUNICIPAL LEAGUE, INC., a nonprofit Corporation, City of Gallup, a New Mexico Municipal Corporation, City of Artesia, a New Mexico Municipal Corporation, City of Raton, a New Mexico Municipal Corporation, Appellants,**

v.

**NEW MEXICO ENVIRONMENTAL IMPROVEMENT BOARD, Appellee.**

**No. 1570.**

Court of Appeals of New Mexico.

July 2, 1975.

Certiorari Denied Aug. 5, 1975.

202

Richard L. C. Virtue, Santa Fe, for appellant New Mexico Municipal League.

Robert S. Skinner, Raton, for appellant City of Raton.

Fred A. Watson, Artesia, for appellant City of Artesia.

James L. Parmalee, Jr., Gallup, for appellant City of Gallup.

Toney Anaya, Atty. Gen., Douglas W. Fraser, Special Asst. Atty. Gen., Environmental Improvement Board, Santa Fe, for appellee.

OPINION

HERNANDEZ, Judge.

This is an appeal from the action of the New Mexico Environmental Improvement Board (Board) adopting solid waste management regulations (regulations).

Appellants challenge these regulations on four points. We will first set forth the Board's statutory authority and its reasons for adopting the regulations and then proceed to a *seriatim* discussion of appellants' points of error.

Section 12–12–11(A)(3), N.M.S.A.1953 (Repl. Vol. 3, Supp.1973) provides:

"The board is responsible for environmental management and consumer protection. In that respect, the board shall promulgate regulations and standards in the following areas: . . . (3) liquid waste; and solid waste sanitation and refuse disposal; . . . ."

Section 12–12–13(A), N.M.S.A.1953 (Repl. Vol. 3, Supp.1973) provides:

"No regulation or amendment or repeal thereof shall be adopted until after a public hearing by the environmental improvement board within the area of the state concerned. Hearings on regulations of state-wide application shall be held at Santa Fe. In making its regulations, the board shall give the weight it deems appropriate to all relevant facts and circumstances presented at the public hearing, including but not limited to: (1) character and degree of injury to, or interference with health, welfare, animal and plant life, property and the environment; (2) the public interest, including the social, economic and cultural value of the regulated activity and the social, economic and cultural effects of environmental degradation; and (3) technical practicability, necessity for, and economic reasonableness of reducing, eliminating or otherwise taking action with respect to environmental degradation."

The Board gave the following reasons for adopting the regulations in the Minutes of its meeting of April 19, 1974:

"1. Section 12–12–11(A)(3) of the Environmental Improvement Act states that the Environmental Improvement Board is responsible for environmental management and consumer protection in the field of liquid waste; and solid waste sanitation and refuse disposal.

"2. The Environmental Improvement Board has not before this date adopted regulations in the field of solid waste management.

"3. The testimony presented at the October 2 and 3, 1973 hearing on solid waste management established that existing storage, collection, transportation and disposal of solid waste in New Mexico is inadequate.

"4. The proposed solid waste regulation will reduce the existing environmental degradation caused by the present improper storage, collection and management of solid waste in New Mexico.

"5. As established by testimony provided in the October 2 and 3, 1973 hearing, the existing procedures used for solid waste management in New Mexico impinge on public health in New Mexico, degrade the land, and pollute New Mexico's air and water.

"6. Local New Mexico communities and counties have looked to the state for direction and have been reluctant to act without state direction.

"7. The proposed regulations will assist the local communities in organizing their solid waste systems and organizing more economically efficient programs.

"8. The testimony provided at the public hearing on October 2 and 3, 1973 established that the proposed regulations will not place an unreasonable economic burden on the communities and counties with the State of New Mexico.

"9. The Environmental Improvement Agency needs the proposed regulations to meet the current demands placed on the Agency by local communities.

"10. The proposed regulations will give field personnel from the Environmental Improvement Agency support in preventing solid waste pollution that leads to vector disease, air and water pollution and land degradation.

"11. As testified to in the October 2 and 3, 1973 hearing, solid waste is the most obvious pollutant in the State of New Mexico.

"12. The proposed regulations are necessary to protect the health, welfare, and environment of the citizens of New Mexico."

POINT I: "SECTIONS 105, 106 and 107 OF THE ENVIRONMENTAL IM-PROVMENT BOARD'S SOLID WASTE MANAGEMENT REGULATIONS EXCEED THE STATUTORY AUTHORITY OF THE BOARD AND ARE INAPPLICABLE TO MUNICIPALITIES."

Appellants contend that Sections 14–49–1 through 7, N.M.S.A.1953 (Repl. Vol. 3) grant to municipalities the authority to acquire and maintain refuse disposal areas or plants, to enforce a general system of refuse collection and disposal, to compel the use of specified kinds of refuse receptacles, and to compel the taking of refuse to designated places. They further point out that § 12–12–11(A)(3), supra, grants the Board authority to regulate "only refuse disposal including matters relating to sanitation at disposal sites, but not municipal storage, transportation and collection systems." Their conclusion is that the Board exceeded its authority in promulgating regulations 105, 106 and 107, in conflict with the refuse collection and disposal article of the Municipal Code. We do not agree.

The regulations challenged under this point provide:

"105: STORAGE.—A. By October 19, 1974 any person who generates solid waste shall provide storage facilities for the solid waste except recreational waste, yard waste and large waste appliances. B. By July 1, 1974, any person who is responsible for the control of parks, recreational areas, and highway rest areas shall provide storage facilities for recreational waste. C. Storage facilities shall: 1. if a building is used, be fly proof, and rodent proof; 2. if outside, be tightly covered, fly proof, rodent proof, and leak proof containers; and 3. be kept reasonably clean and sanitary. D. Outside containers shall: 1. if manually handled, have a capacity less than or equal to 32 gallons; and (a) have safe, usable [sic] handles; or (b) be bags which are not filled to an extent that they rupture with reasonably careful handling; or 2. if mechanically handled, be compatible with collection vehicles. E. Any person who generates yard waste or large waste appliances shall store the yard waste or large waste appliances in a manner which prevents unsightliness and rodent harborage."

"106. COLLECTION.—A. By July 1, 1975 any person serving a municipality or any portion thereof with a population greater than 3,000 shall provide at least once weekly collection or as often as otherwise necessary to comply with the minimal requirements of the Environmental Improvement Agency.

"B. By July 1, 1975, any person who is responsible for the control of parks, recreational areas and highway rest areas shall provide collection for recreational waste as often as is necessary to prevent the waste from overflowing the storage containers.

"C. Any person who provides collection shall have collection vehicles by July 1, 1975, which:

1. do not leak;

2. have covers which prevent the solid waste from blowing from the vehicle during travel; and

3. are cleaned at such times and in such manner as to prevent offensive odors and unsightliness."

"107. TRANSPORTATION.—A. By July 1, 1975, any municipality with a population greater than 3,000 or any cooperative association which serves more than 3,000 people shall provide transportation.

"B. By July 1, 1975, any person who is responsible for the control of parks, recreational areas, and highway rest areas shall provide transportation for recreational waste.

"C. Any person who provides transportation shall have by July 1, 1975, transportation vehicles which:

1. do not leak;

2. have covers which prevent the solid waste from blowing from the vehicles during transportation; and

3. are cleaned at such times and in such manner as to prevent offensive odors and unsightliness.

"D. If a transfer station is used, it shall be designed and operated to minimize entry by flies and rodents and to prevent public nuisance and hazards to health or welfare."

▇▇▇ All statutes are presumed to be enacted by the legislature with full knowledge of all other statutes in *pari materia* and with reference thereto. *State v. Dist. Ct. of Fourth Judicial Dist.*, 39 N.M. 523, 51 P.2d 239 (1935). Furthermore, statutes which are in *pari materia* should, as far as reasonably possible, be construed together as though they constituted one law so as to give force and effect to each. *State ex rel. State Park and Recreation Commission v. New Mexico State Authority*, 76 N.M. 1, 411 P.2d 984 (1966). This rule applies even though the statutes being construed together were enacted at different times and the latter contains no reference to the

former. *State v. Dist. Ct. of Fourth Judicial Dist.*, supra. Applying these rules to this situation, it is our opinion that there is no inconsistency or conflict between these statutes. § 12–12–11(A)(3), supra, gives the Board state-wide responsibility for environmental management and protection; it makes mandatory the promulgation of regulations and standards by the board in the areas of liquid waste, and solid waste sanitation and refuse disposal. Section 14–49–2, supra, of the Municipal Code provides that:

"*Authority to regulate refuse.*—A municipality *may*, by ordinance:

A. Acquire and maintain refuse disposal areas or plants within or without the municipal boundary;

B. Enforce a general system of refuse collection and disposal;

C. Prohibit the deposit of refuse on either public or private property;

D. Compel the taking of refuse to designated places;

E. Specify the kind, size and material of a refuse receptacle;

F. Provide for the destruction of refuse or its use for a beneficial purpose; and

G. Require any person owning or controlling any occupied real property to:

(1) provide and maintain suitable refuse receptacles;

(2) deposit all refuse in the receptacles; and

(3) place a receptacle in a place convenient for removal." [Emphasis Ours.]

This section merely gives municipalities the option or discretion to enact ordinances governing the collection and disposal of refuse. The Environmental Improvement Act, Sections 12–12–1 through 12–12–14, N.M.S.A.1953 (Repl. Vol. 3, Supp.1973) is a comprehensive act which applies not only to liquid waste and solid waste sanitation and refuse disposal, but also to such addi-

tional and diverse fields as "food protection", "water supply and water pollution", "air quality management", "radiation control", "noise control", "nuisance abatement", "vector control", "occupational health and safety", "sanitation of public swimming pools and public baths", and the general sanitation of public buildings. Section 14-49-1 through 14-49-7, of the Municipal Code, supra, cover only "refuse" (as defined in § 14-49-1) collection and disposal. It is manifest that it was the intention of the legislature to give the Environmental Improvement Board state-wide, paramount authority to "enforce regulations and standards" in the various areas listed and that all other entities of government and political subdivisions thereof must conform. That the Board's authority must be paramount is further borne out by the changes made by the 1973 amendment. § 12-12-10, (Rep. Vol. 3, Supp.1971), supra, previously provided in pertinent part:

> "The agency is responsible for environmental management and consumer protection programs and in that respect shall maintain and enforce rules, regulations and standards in the following areas to the extent that these programs are not expressly delegated by law to another agency or political subdivision and are now or hereafter made the responsibility of the agency by law." [Emphasis Ours.], Laws 1971, ch. 277, § 10.

The 1973 amendment, Laws 1973, ch. 340, § 5, struck all of the underscored language.

█ Appellants make the further argument that the phrase "solid waste sanitation", as used in § 12-12-11(A)(3), supra, is limited or qualified by the phrase, "refuse disposal", which is used in the same paragraph of the section. We do not agree. "Liquid waste", "solid waste", and "refuse", in our opinion, constitute three distinct categories of environmental concern. Subsection (A)(3) might well have been more clearly written as follows: "liquid waste; and solid waste sanitation and refuse disposal." That this was the intention of the legislature is also demonstrated by another change made by the 1973 amendment. This paragraph previously read "D. liquid and solid waste." Laws 1971, ch. 277, supra. That there might be some overlapping among the three categories does nothing to support appellants' contention that one qualifies the other.

POINT II: "CERTAIN REGULATIONS ARE SO VAGUE THAT MEN OF COMMON INTELLIGENCE MUST NECESSARILY GUESS AS TO THEIR MEANING AND ARE, THEREFORE, VOID."

█ Appellants argue that since § 12-12-14, supra, makes violation of any of the regulations a petty misdemeanor, the vagueness of certain of the terms used make these regulations violative of due process. See *State v. Silva*, 86 N.M. 543, 525 P.2d 903 (Ct.App.1974). Some of the particular language complained of is found in subsections (C)(1) and (2) of § 105, which relate to storage facilities for solid waste and recreational waste. The regulation requires that such storage facilities shall:

"1. if a building is used, be *fly proof, and rodent proof*;

"2. if outside, be tightly covered, *fly proof rodent proof,* and *leak proof* containers; . . ." [Emphasis Ours.]

Appellants argue that without "any guidance as to what the Board and Agency consider to be 'fly proof' and 'rodent proof' storage containers, municipal officials and local citizens are put in the position of having to guess at what kind of containers are required." They urge that whether a particular container is "fly proof" or "rodent proof" depends upon the number of flies and rodents in the area; and they claim that there is no such thing as a "rodent proof" container. We find absolutely nothing vague or obscure about these

terms. The word "proof", when used as an adjective, is very commonly used in combination with other words to indicate that the thing is impenetrable, such as bullet-proof or that the thing is successful in resisting, such as rust-proof. Fly proof clearly means impenetrable by flies. Rat proof means impregnable to rats. Leak proof simply means that the container will not permit the escape of fluids. Appellants further argue that there is no container which is absolutely rat proof and that therefore the regulations establish a standard impossible of accomplishment. The answer to the argument is that it cannot be substantiated in fact. ". . . Technically, rat-proofing, is the application of four fundamental rules of construction and upkeep . . . ." Freedman, *Sanitarian's Handbook*, at p. 193 (1970). We conclude that the term is commonly used and understood in the profession.

■■ Appellants similarly contend that Regulations 106(C)(3), and 107(C)(3), requiring that any vehicle employed in collection or transportation of waste and refuse be ". . . cleaned at such times and in such manner as to prevent *offensive odors* and *unsightliness*" [Emphasis Ours.], are constitutionally repugnant for vagueness. The standard for determining whether a given statute is vague was set forth in *State ex rel. Bliss v. Dority*, 55 N.M. 12, 225 P.2d 1007 (1950) as follows:

"Legislative enactments may be declared void for uncertainty if their meaning is so uncertain that the court is unable, by the application of known and accepted rules of construction, to determine what the legislature intended with any reasonable degree of certainty. But absolute or mathematical certainty is not required in the framing of a statute."

Chief Justice Brice went on to quote from 50 Am.Jur., Statutes, Sec. 473, as follows:

" 'The use of such terms as "reasonable" or "unreasonable" in defining standards of conduct or in prescribing charges, allowances and the like, . . . have

been held not to render a statute invalid for uncertainty and indefiniteness.' "

We believe the same standard applies in the case of administrative regulations, and we find no vagueness in the words "offensive odors" or "unsightliness" when read in conjunction with the stated basic purposes of the regulations. The question to be asked is: what might a reasonable person of average sensibilities consider to be an offensive odor or unsightly condition? *People v. Rubenfeld*, 254 N.Y. 245, 172 N. E. 485 (1930). We believe the answer to such a question is capable of common understanding. See Note, 71 Mich.L.R. 1438 (1973).

■ Regulation 103(A) provides: "At least thirty days prior to the creation or modification of a system for the collection, transportation, or disposal of solid waste the person who is operating or will operate the system shall obtain a registration certificate from the agency." The definition of the word, "modification", is set forth in Regulation 101(S), as follows: " 'modification' means any *significant* change in the physical characteristics or method of operation of a system for the collection, transportation, or disposal of solid waste; . . . . " [Emphasis Ours.] Appellants contend that the word, "significant", as used in this context is unduly vague. We do not agree. Webster's Third New International Dictionary (1971), defines the term, "significant", as: "having or likely to have influence or effect"; and we do not believe that use of the term here engenders any mystery about when a certificate will be required.

■ Appellants finally contend under this point that the words, "adequate", as used in Regulation 108(E)(3), requiring, "*adequate* means to prevent and extinguish fires" at sanitary landfill sites and "necessary", as used in Regulation 108(A)(B) and (C), requiring one or more sanitary landfills or other disposal facilities, except modified landfills, for populations exceeding 3000 and one or more sanitary landfills

or other disposal facilities, not excluding modified landfills for populations under 3000 and of those responsible for disposal of waste collected from parks, recreational areas and highway rest areas, "as *necessary*", are vague. Again, we do not agree.

 In this field it has long been recognized that it is impossible to anticipate every factual situation that might arise under a given set of regulations. Further, it is important on the record before us to remember that we are dealing with regulations, legislative justification for which is found in such broadly applied terms as *public interest, social well-being, environmental degradation*, and the like. That it is within the power of the legislature to enact legislation for these purposes is well settled. *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954); *People v. Stover*, 12 N.Y.2d 462, 240 N.Y.S.2d 734, 191 N.E.2d 272 (1963); and see, *City of Santa Fe v. Gamble-Skogmo, Inc.*, 73 N.M. 410, 389 P.2d 13 (1964). In order to give effect to these broad legislative concerns, however, it is necessary that the standards developed by the administrative agency be somewhat general. Indeed, administrative regulations of this kind are required to hold the difficult line between overbreadth or vagueness on the one hand and inflexibility and unworkable restriction on the other.

By way of example, we note that appellants have suggested that instead of requiring that sanitation vehicles be cleaned when *unsightly*, the board should have required that they be cleaned once a week. The difficulty with such a rigid standard, especially in the field of environmental regulation, is readily apparent. Some vehicles may need cleaning only once a month, while others might need cleaning daily. In this case, we hold that the terms complained of are capable of reasonable application and are sufficient to limit and define the duties of the individuals and entities which will be governed by them.

POINT III: "THE REGULATIONS WERE NOT ADOPTED IN ACCORDANCE WITH LAW IN THAT THE TESTIMONY ADOPTED, THE STANDARDS FOLLOWED, AND THE REASONING USED IN SUPPORT OF THE REGULATIONS WERE NOT PROPERLY INDICATED BY THE BOARD."

Section 12–12–13(I), supra, sets forth the grounds upon which we shall judge an appeal from an administrative determination of this kind:

"Upon appeal, the court of appeals shall set aside the regulation only if found to be:

(1) arbitrary, capricious or an abuse of discretion;

(2) not supported by substantial evidence in the transcript; or

(3) otherwise not in accordance with law."

 This court in *City of Roswell v. New Mexico Water Quality Control Commission*, 84 N.M. 561, 505 P.2d 1237 (Ct.App. 1972), stated that in adopting regulations, administrative agencies must give some indication of their reasoning and of the basis upon which the regulations were adopted in order for the courts to be able to perform their reviewing function. However, we also pointed out that formal findings in a judicial sense are not required. See also, *Pharmaceutical Manufacturer's Ass'n v. N. M. Board of Pharmacy*, 86 N.M. 571, 525 P.2d 931 (Ct.App.1974). We believe that the Environmental Improvement Board, here, has given us sufficient indication of its reasoning and of the basis upon which it adopted these regulations. We also believe that the procedure employed demonstrates substantial compliance with § 12–12–13(A), supra. Subsection (1), thereof, requires that the Board, " . . . shall give the weight it deems appropriate to the character and degree of injury to, or interference with health, welfare, animal and

plant life, property and the environment." Paragraphs 3, 4, 5 and 11, of the reasons stated by the Board comply with this requirement.

Subsection (2), of § 12–12–13(A), supra, requires that the Board consider, "the public interest, including the social, economic and cultural value of the regulated activity and the social, economic and cultural effects of environmental degradation." We believe that paragraphs 3, 4, 5, 6, 7, and 12, of the Board's reasons meet this requirement.

Subsection (3), of § 12–12–13(A), supra, provides that the Board consider the, "technical practicability, necessity for, and economic reasonableness of reducing, eliminating or otherwise taking action with respect to environmental degradation." Paragraphs 7, 8, 9, and 10, of the Board's reasons respond to this requirement.

In summary under this point, we note that in its brief, the Board amply demonstrates that each of the twelve reasons listed for adopting the regulations was founded and based upon evidence and testimony it had accumulated during the several meetings it held on the proposed regulations. Thus, not only are the reasons for adopting the regulations clearly indicated, the foundation for those reasons is likewise ascertainable from the record.

POINT IV: "CONTRARY TO THE PROVISIONS OF THE 'OPEN MEETING LAW' (LAWS OF 1974, CH. 91), THE SOLID WASTE REGULATIONS WERE ENACTED BY THE ENVIRONMENTAL IMPROVEMENT BOARD AT A MEETING FOR WHICH REASONABLE NOTICE TO THE PUBLIC WAS NOT GIVEN: THEREFORE, THE REGULATIONS MUST BE SET ASIDE."

Section 5–6–23(A), (B), (C), N.M.S.A. 1953 (1974 Interim Supp.) provides:

"A. The formation of public policy or the conduct of business by vote shall not be conducted in secret.

"B. All meetings of a quorum of members of any board, commission or other policy-making body of any state agency, or any agency or authority of any county, municipality, district or any political subdivision held for the purpose of formulating public policy, discussing public business or for the purpose of taking any action within the authority of or the delegated authority of such board, commission or other policy-making body, are declared to be public meetings open to the public at all times, except as otherwise provided in the constitution or the provisions of this act [5–6–23 to 5–6–26].

"C. Any such meetings at which the discussion or adoption of any proposed resolution, rule, regulation or formal action occurs, and at which a majority or quorum of the body is in attendance, shall be held only after reasonable notice to the public. The affected body shall determine at least annually in a public meeting what notice shall be reasonable when applied to such body."

Section 5–6–25(A), N.M.S.A.1953 (1974 Interim Supp.) provides:

"A. No resolution, rule, regulation, or ordinance or action of any board, commission, committee or other policy-making body shall be valid unless taken or made at a meeting held in accordance with the requirements of section 1 of this act [5–6–23]. Every resolution, rule, regulation, ordinance or action of any board, commission, committee or other policy-making body shall be presumed to have been taken or made at a meeting held in accordance with the requirements of section 1 of this act [5–6–23]."

The Board adopted the regulations at its meeting on April 19, 1974. Notice of this meeting was mailed at least 10 days

prior to the scheduled date to 64 individuals, committees and organizations. The appellant, New Mexico Municipal League, Inc., received such notice. Furthermore, appellants had and exercised the opportunity to appear at preliminary meetings on October 2 and 3, 1973, at which evidence was taken regarding the proposed regulations. Notice of these preliminary meetings was published in newspapers in Farmington, Clovis, Silver City, Albuquerque, Santa Fe, Roswell, Hobbs, Raton and Las Cruces. In addition, the Board issued a "news release" on April 16, 1974, giving the time and place of the April 19th meeting and stating that the Board would "take action on proposed regulations for solid waste and New Mexico's ambient air standard for sulfur dioxide." Notice of the meeting citing a U.P.I. release appeared in the Clovis News Journal on April 18, 1974, and in the Lovington Daily Leader on April 17, 1974. Moreover, April 19th was the regular monthly meeting date for the Board. We hold that all of these efforts by the Board constituted reasonable notice to the public within the meaning of § 5–6–23(C), supra.

The regulations appealed from are accordingly affirmed.

It is so ordered.

HENDLEY, J., concurs.

SUTIN, J., dissenting.

SUTIN, Judge (dissenting).
I dissent.

A. *The Board exceeded its authority in adopting regulations 105, 106 and 107.*

(1) *The Board was limited to "refuse disposal" regulations.*

Section 12–12–11(A)(3), N.M.S.A.1953 (Repl.Vol. 3, 1973 Supp.) reads:

The board is responsible for environmental management and consumer protection. In that respect, the board shall promulgate regulations and standards in the following areas:

* * * * * *

(3) liquid waste; and *solid waste sanitation and refuse disposal.* [Emphasis added].

The Board adopted "SOLID WASTE MANAGEMENT Regulations". Regulation 108 provided for "Disposal".

The Board was limited to regulations and standards affecting "solid waste sanitation and refuse disposal".

The Environmental Improvement Act (E.I.A.) makes no provision for the "storage", "collection" and "transportation" of "solid waste", nor does the statute authorize the adoption of regulations to cover these subjects. Nevertheless, the Board adopted regulations covering "storage", "collection" and "transportation" of solid waste, being Regulations 105, 106 and 107.

The Board's only claim of authority is that the Legislature assigned the power to the Board to fulfill its responsibility for environmental management and consumer protection.

It is a mystery to me how management of "refuse disposal" can be extended by the Board to cover management of the "storage", "collection" and "transportation" of refuse.

The word "refuse" is not defined in the Act or in the regulations. It does not appear elsewhere in the Act or the regulations.

Neither the majority opinion nor the Board has shown any authority by which the Board had the power to adopt regulations concerning "storage", "collection" and "transportation" of refuse, when its authority was limited to "refuse disposal".

It is a fundamental rule in administrative law that an administrative body has only such power as is conferred on it by law. These powers include those expressly granted by statute and those fairly implied therefrom. *Brininstool v. New Mexico State Board of Education*, 81 N.M. 319, 466 P.2d 885 (Ct.App.1970). No matter how well intentioned, administrative bodies must comply with the law to prevent any

abuse of it. *Continental Oil Co. v. Oil Conservation Com'n*, 70 N.M. 310, 373 P.2d 809 (1962).

E.I.A. did not vest unbridled or arbitrary power in the Board to adopt regulations.

The Board exceeded its authority when it adopted Regulations 105, 106 and 107. They are void.

(2) *Gallup and Artesia are not bound.*

Section 12–12–13(C) provides that notices of a public hearing "shall be published in a newspaper of general circulation in the area [affected]". Gallup and Artesia each have a newspaper—The Gallup Independent and The Artesia Daily News. No notice was published in these newspapers. The municipalities were not notified and they were not present at the hearings. The regulations are not binding on them. *Brininstool*, supra.

B. *Regulations are otherwise defective.*

(1) *Regulation 105–STORAGE, is not applicable to municipalities.*

Regulation 105 is not applicable to municipalities. It applies to "any person".

Regulation 107, TRANSPORTATION, says that the municipality "shall provide transportation".

Regulation 108, DISPOSAL, says that the municipality "shall dispose of solid waste".

Regulation 105, STORAGE, does *not* say that the municipality "shall provide storage facilities".

What is meant by the word "person"?

Section 12–12–6 gives the Board authority to adopt regulations applicable "to persons".

"The word 'person' may be extended to firms, associations and corporations." Section 1–2–2(E), N.M.S.A.1953 (Repl.Vol. 1).

The word "corporations" does not include "municipal corporation". It applies only to private corporations. *City of Los Angeles v. Eighth Judicial District Court*, 58 Nev. 1, 67 P.2d 1019 (1937); *State v. Central Power & Light Co.*, 139 Tex. 51,

161 S.W.2d 766 (1942); *City of Dallas v. Halford*, 210 S.W. 725 (Tex.Civ.App. 1919); *In re Mountain View Public Utility District No. 1*, 359 P.2d 951 (Alaska, 1961); *Feemster v. City of Tupelo*, 121 Miss. 733, 83 So. 804 (1920). They are dealt with under separate titles in the statutes. *City of Tyler v. Texas Employers' Ins. 'Ass'n*, 288 S.W. 409 (Tex.Com. of App.1926); *City of Webster Groves v. Smith*, 340 Mo. 798, 102 S.W.2d 618 (1937).

(2) *Regulation 106–COLLECTION, is not applicable to municipalities.*

Regulation 106(A) is not applicable to municipalities. It is applicable only to persons "serving a municipality". It provides for "at least once weekly collection". Collection of what? The regulation is silent.

Regulation 106(b) provides that "any person who is responsible for the control of parks, recreational areas and highway rest areas shall provide collection for recreational wastes . . . . ."

By Regulation 101(B), the Board defined the word "person" to include a "political subdivision" such as a municipality. By this power, the Board has displaced the Legislature. This it cannot do. It is not a regulation contemplated by the Act. Even if it were, the Legislature cannot delegate authority to a board to adopt rules or regulations which abridge, enlarge, extend or modify the statute. *State v. Ashby*, 73 N. M. 267, 387 P.2d 588 (1963).

In 1965, the Legislature adopted a Comprehensive Code affecting municipalities. Laws of 1965, ch. 300. Section 14–1–2(G), N.M.S.A.1953 (Repl.Vol. 3) defines a "municipality" as "any incorporated city, town or village, whether incorporated under general act, special act or special charter, and H class counties." From this definition, the Board has no power to create a "municipality" out of the word "person".

When the Legislature wants to define a "person" as a "political subdivision", it will do so. See, § 59–14–3, N.M.S.A.1953 (2nd

Repl.Vol. 9, pt. 1). This falls within the Occupational Health and Safety Act referred to in § 12–12–11, subd. A(9) of Environmental Improvement Act. See § 12–9–4(H) of the Radiation Protection Act; § 12–14–2(C) of the Air Quality Control Act, both of which are also referred to in § 12–12–11, subd. A(9).

The Board's definition of "person" as a "political subdivision" is void.

### C. E.I.A. did not repeal Article 49 of the Municipal Code.

E.I.A. was adopted in 1971. It makes no reference to "municipalities". It does not declare whether municipalities are subject to or exempt from the regulations of the Board. The Act covers "refuse disposal".

Prior thereto, in 1965, the Legislature enacted Article 49 of the Municipal Code. It covers collection and disposal of "refuse". Sections 14–49–1 to 14–49–7, N. M.S.A.1953 (Repl.Vol. 3).

The Board claims that it has sovereignty over municipalities in this area. The majority opinion grants that power.

The Legislature enacted the Municipal Code and the E.I.A. In the Municipal Code, the Legislature specifically delegated to the municipality the authority and power to regulate the collection and disposal of "refuse". In E.I.A. the Legislature granted to a Board the power to manage and regulate "refuse disposal".

The question to decide is: Did the E.I. A. impliedly repeal Article 49 of the Municipal Code? The answer is "No".

First, it is established law in New Mexico that repeals by implication are not favored, and will not be held to exist where a general statute conflicts with a statute special in scope. *State ex rel. Armijo v. Romero*, 32 N.M. 178, 253 P. 20 (1927); *State v. Lujan*, 76 N.M. 111, 412 P.2d 405 (1966); *Saiz v. City of Albuquerque*, 82 N.M. 746, 487 P.2d 174 (Ct.App.1971); *Santa Fe Downs, Inc. v. Bureau of Revenue*, 85 N.M. 115, 509 P.2d 882 (Ct.App. 1973). This rule is applicable here. The

Municipal Code is specific in scope; E.I.A. is general.

Second, the Legislature did not manifest its intention that E.I.A. supercede Article 49 of the Municipal Code.

In *Ellis v. New Mexico Const. Co.*, 27 N.M. 312, 319, 201 P. 487, 490 (1921), the Supreme Court said:

A statute is repealed by implication, though such repeal is not favored, where the legislative intent is *manifest* that the latter statute should supersede the former, *and such intent is manifest where the Legislature enacts a new and comprehensive body of law which is so inconsistent with and repugnant to the former law on the same subject* as to be irreconcilable with it, *and especially does this result follow where the latter act expressly notices the former in such a way as to indicate an intention to abrogate*. [Emphasis added].

E.I.A. does not manifest a legislative intention to repeal Article 49 of the Municipal Code. It does not cover the same subject. It does not expressly notice Article 49 in any manner to indicate an intention to abrogate.

But if we desire to be comforting to environmental protection, we can say that "refuse disposal" was abrogated by implication. But common sense shows that "collection" of refuse was not abrogated. The Legislature did not grant to the Board any powers of domination whereby it can, by regulation, usurp the authority granted to municipalities. The Board was not intended to be the "Autocrat of the Breakfast Table".

### D. E.I.A. is not a "Solid Waste Disposal Act".

New Mexico is one of the few states in the union under which "regulations by the appropriate agency constitute the sole basis for state involvement, no solid waste statute having been enacted." 1 Grad, Treatise on Environment Law, § 4.02.

The federal Solid Waste Disposal Act of 1965, 42 U.S.C.A. § 3252(5), defines the

**214**

term "solid waste disposal" as "the collection, storage, treatment, utilization processing, or final disposal of solid waste."

E.I.A. does not. If the Legislature had intended to include collection, storage and transportation of solid wastes, it would have adopted a "Solid Waste Disposal Act" and it would have defined solid waste disposal.

Section 12–12–11(A)(3) gave the Board the right to adopt regulations and standards in the area of "liquid waste; and solid waste sanitation and refuse disposal". The Act did not define any of those terms.

The Legislature, not the administrative agency, has the power or authority to legislate on "solid waste disposal".

E. *The Environmental Improvement Act does not provide for any enforcement against municipalities.*

Section 12–12–14 provides:

A person who violates any regulation of the board is guilty of a petty misdemeanor. This section does not apply to any regulation for which a criminal penalty is otherwise provided by law.

As heretofore shown, a municipality is not a person. If a municipality refuses to abide by the regulations adopted by the Board, the statute makes no provision for the enforcement thereof. Neither is the remedy mandamus. Mandamus is a remedy for a clear legal duty. *State v. Vigil,* 74 N.M. 766, 398 P.2d 987 (1965). No such clear legal duty exists under the Board's regulations to compel a municipality to undertake storage, collection, transportation and disposal of solid waste.

If any municipality fails in its statutory duties in this area, the citizens affected thereby can and will compel compliance.

*Conclusion*

Environmental improvement and consumer protection is in its infancy. Its purposes are praiseworthy. But in the area of solid waste refuse disposal, the Legislature has imposed the burden on the municipality.

If the Legislature desires to place the municipality under the aegis of the Board, it should amend E.I.A. to include municipalities, repeal Article 49 of the Municipal Code, enact a Solid Waste Disposal Act, define its terms to guide the Board in the adoption of regulations, and provide remedies for enforcement of the Act.

When this is accomplished, citizens will be protected by way of "health, safety, comfort and economic and social well-being".