902 P.2d 554

**MOONGATE WATER COMPANY, INC., Louis A. Gariano, Thelma O. Gariano, and Jeffrey Gariano, Plaintiffs–Appellants,**

**v.**

**The STATE of New Mexico, New Mexico Environment Department, New Mexico Environmental Improvement Division, Gabriel Garcia, individually, Oscar Simpson, individually, Kathleen Sisneros, individually, and Judith M. Espinosa, individually, Defendants–Appellees.**

**No. 15060.**

Court of Appeals of New Mexico.

June 30, 1995.

Certiorari Denied Aug. 14, 1995.

Jeffrey J. Buckels, Albuquerque, for plaintiffs-appellants.

Tom Udall, Attorney General, Christopher D. Coppin, Ass't Attorney General, Albuquerque, for defendants-appellees.

## OPINION

ALARID, Judge.

Moongate Water Company (Moongate) appeals an order of the district court granting summary judgment in favor of Defendants Garcia, Sisneros, Simpson and Espinosa (Defendants) in the New Mexico Environment Department (Environment Department). We address whether Moongate's due process, equal protection, and first amendment rights under the United States Constitution have been violated. Because we find no evidence of a constitutional violation, we affirm.

## BACKGROUND

Moongate had made a practice of constructing wells without getting prior state approval, and Gabriel Garcia (Garcia), the District Engineer in Las Cruces for the Environment Department, warned in June 1989 that the state would take action if Moongate continued the practice. Moongate started drilling Well 12 in September 1989 without first obtaining approval from the Environment Department. In response, the Environment Department filed a criminal complaint against Moongate and its President in the Doña Ana Magistrate Court. Before receiving notice of the complaint, but after construction of Well 12, Moongate filed an

application for construction with the Environment Department.

As a result of the charges, Moongate and its president were convicted of a misdemeanor violation in magistrate court. Thereafter, Moongate appealed to district court. The district judge reversed the conviction and stated that this was a "civil matter as to whether approval will be given in the future, and not criminal."

Before the magistrate court trial, Garcia informed Moongate that since Well 12 had already been constructed, Moongate must file "as-built" plans certified by a registered professional engineer that construction had complied with minimal Environment Department standards. After Moongate filed the plans, Garcia pointed out deficiencies in Moongate's application and requested more information. When Moongate resubmitted the application, Garcia was suspicious about the change in as-built plans to conform with regulations. For example, when informed that grout depth must be at least twenty feet, the resubmitted plans indicated that the grout depth for Well 12 was indeed twenty-one feet, whereas the previous grout depth indicated for the already constructed well was fifteen feet.

More than nine months after the reversal Garcia wrote to Kathleen Sisneros (Sisneros), Director of the Water and Waste Management Division of the Environment Department, to evaluate the growing problem with Moongate. Sisneros informed Moongate that Well 12 could be used if Moongate met certain conditions, including installation of a disinfection system. Moongate rejected this proposal.

Garcia also found deficiencies in Moongate's applications for construction of Wells 13 and 14. Garcia informed Moongate that the Environment Department would approve revised applications for Wells 13 and 14 under certain detailed conditions. Garcia and the Environment Department claim here that the applications did not comply with recommended standards for construction. They further claim, despite Moongate's allegations to the contrary, that conditional approval was not intended as a retaliatory attack against

Moongate for successfully appealing the criminal misdemeanor conviction.

In February 1992, after this suit was filed, Moongate entered the Environmental Improvement Agency Excellence Awards competition sponsored by the United States Environmental Protection Agency (EPA). Moongate filed its entry for the competition with the Environment Department. Apparently, it was routine practice for the Environment Department to automatically recommend the entries it received for a water quality award. Moongate's entry, however, was forwarded to the EPA by Oscar Simpson (Simpson) and Sisneros without recommendation, based on the advice of the Environment Department's legal counsel. Moongate claims in its complaint that the Environment Department's failure to nominate it resulted in the EPA not selecting a winner in the category in which Moongate was the only entrant.

Moongate also alleges that Garcia and the other Defendants in this case retaliated against it for the exercise of its constitutional rights by appealing the magistrate conviction. Garcia swore that he followed Environment Department procedure in his actions toward Moongate's well applications, but procedures had not been previously enforced. Based on their alleged retaliatory actions, Moongate sued Defendants Garcia, Sisneros, Simpson, and Judith Espinosa (the Secretary of the Environment Department who had general supervisory authority over the other Defendants) in their official and individual capacities under 42 U.S.C. § 1983.

Because this case involves a challenge to the implementation of regulations governing the well application process in New Mexico, we shall briefly describe that regulatory process. The Environment Department is charged with enforcing the provisions of the Environmental Improvement Act, NMSA 1978, Sections 74-1-1 to -10 (Repl. Pamp.1993) (the Act). The purpose of the Act is to provide for

environmental management and consumer protection in this state in order to ensure an environment that in the greatest possible measure: will confer optimum health, safety, comfort and economic and social

well-being on its inhabitants; will protect this generation as well as those yet unborn from health threats posed by the environment; and will maximize the economic and cultural benefits of a healthy people.

Section 74–1–2. The Environmental Improvement Board promulgates all regulations under the Act, Section 74–1–5, and the Environment Department has the power to enforce those regulations via the court system. Section 74–1–6.

■ Pursuant to its authority to promulgate regulations and standards for water supply systems in Section 74–1–8(A)(2), the Environmental Improvement Board has adopted Water Supply Regulations. *See* Water Supply Regulations, Part I § 102 (Regulations). The Regulations' Part V and appendix include standards for Water Supply Construction Requirements. "All public water supply system projects [such as Moongate's] must be approved by the [Environment] Department *prior to the start of construction."* *Id.* § 501 (emphasis added). The Environment Department may deny an application if it appears that any provisions of the Regulations will not be met after completion of the project. *Id.* § 502(F). It was the legislature's intent to give the Environmental Improvement Board, and therefore the Environment Department, paramount authority to enforce its regulations and standards. *See New Mexico Mun. League, Inc. v. New Mexico Envtl. Improvement Bd.,* 88 N.M. 201, 207, 539 P.2d 221, 227 (Ct.App.), *cert. denied,* 88 N.M. 318, 540 P.2d 248 (1975).

## DISCUSSION

■ We begin by discussing the difference between an official and an individual capacity suit. In a successful individual capacity suit, personal liability would be imposed on a public official for his or her unlawful actions taken "under color of state law." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Whereas, in an official capacity suit, the public official is considered an agent of the public entity and any liability would be imposed on the entity itself. *Id.* at 165–66, 105 S.Ct. at 3104–05; *see also Ford v. New Mexico Dep't of Pub. Safety,* 119 N.M. 405, 410–11, 891 P.2d 546, 551–52 (Ct.App.1994), *cert. denied,* 119 N.M. 354, 890 P.2d 807 (1995) (discusses distinction between official and individual capacities in civil rights litigation). At any rate, we need not address the distinctions between the two types of suits because we find that Moongate's constitutional claims lack merit under either type, as discussed below.

■ Defendants moved for summary judgment on Counts I, II, IV, and V of Moongate's second amended complaint. The trial court granted summary judgment in favor of all individual Defendants. In reviewing an order granting summary judgment, we consider the evidence in the light most favorable to the non-movant. *Eavenson v. Lewis Means, Inc.,* 105 N.M. 161, 162, 730 P.2d 464, 465 (1986). Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Roth v. Thompson,* 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992). Defendants need only make a prima facie showing that they are entitled to summary judgment; thereafter the burden shifts to Moongate to show specific evidentiary facts exist which require a trial on the merits. *Id.* at 334–35, 825 P.2d at 1244–45. Moongate may not merely rest on the allegations of the complaint. *Dow v. Chilili Coop. Ass'n,* 105 N.M. 52, 55, 728 P.2d 462, 465 (1986).

### A. *42 U.S.C. § 1983 CLAIMS*

42 U.S.C. § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ To bring a claim under Section 1983, a plaintiff must establish that: (1) the actions

complained of were done by a person acting under color of state law; and (2) those actions deprived the plaintiffs of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981); *Ruark v. Solano,* 928 F.2d 947, 949 (10th Cir.1991). "Thus, an individual-capacity suit simply requires proof of a deprivation of a federally protected right by an individual acting under color of state law." *Gardetto v. Mason,* 854 F.Supp. 1520, 1527 (D.Wyo.1994).

Section 1983 does not itself establish or create any rights, it only authorizes the granting of relief when a claimant demonstrates a violation of rights created by the federal Constitution or statute. Therefore, it is this Court's duty to determine whether the constitutional provision in question (the First Amendment, for example) itself encompasses the alleged harm. *See* 1 Martin A. Schwartz & John E. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* § 3.4, at 121–23 (2d ed. 1991) [Hereinafter *Section 1983 Litigation* ].

## B. *DUE PROCESS*

"No person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. These principles are applied to the states through the Fourteenth Amendment. Concerning Fourteenth Amendment due process violations, Moongate asserts generally in Count I of its complaint that it complied with all Environment Department regulations but did not get well permits. Moongate also claims that: Garcia and Sisneros acted arbitrarily and capriciously in denying applications for Wells 13 and 14; Garcia and Sisneros failed to comply with their own regulations; and Garcia, Sisneros, and Simpson deprived Moongate of its property rights in its water. Moongate further claims in Count II that Sisneros and Simpson violated Section 1983 by their actions towards Moongate's application for an EPA water quality award. Moongate professes a "property interest" in the commercial use of the application.

### 1. *Well Permits*

The Fourteenth Amendment does not itself create property interests, rather " 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....' " *Gardner v. City of Baltimore,* 969 F.2d 63, 68 (4th Cir. 1992) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). Moongate claims a property interest in a well permit as an extension of its property right in its water. "Although the right to change point of diversion or place of use is an inherent property right incident to the ownership of water rights, it is a right subject to conditions, i.e., ... it may be enjoyed only when done in accordance with statutory procedure." *Durand v. Reynolds,* 75 N.M. 497, 500, 406 P.2d 817, 819 (1965).

Moongate's due process claim is not that there was a violation of procedural due process—such as a failure to give proper notice or conduct a fair hearing. Rather, Moongate emphasizes in its brief that its claim is for violation of *substantive* due process. To prevail on such a claim, however, Moongate must establish that its property interests were injured by governmental action that shocks the conscience. We agree with the First Circuit's position that where state officials have "allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation." *Nestor Colon Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 45 (1st Cir.1992) (quoting *PFZ Properties, Inc. v. Rodriguez,* 928 F.2d 28, 31 (1st Cir.1991), *cert. dismissed,* 503 U.S. 257, 112 S.Ct. 1151, 117 L.Ed.2d 400 (1992)).

Substantive due process, as a theory for constitutional redress, has in the past fifty years been disfavored, in part because of its virtually standardless reach. To apply it to claims like the present would be to insinuate the oversight and discretion of federal judges into areas traditionally reserved for state and local tribunals. Clearly, it is no simple matter to decide what abuses to regard as abuses of "substantive" due process. Every litigant is

likely to regard his own case as involving such an injustice. Thus, we have consistently held that the due process clause may not ordinarily be used to involve federal courts in the rights and wrongs of local planning disputes. In the vast majority of instances, local and state agencies and courts are closer to the situation and better equipped to provide relief. We have left the door slightly ajar for federal relief in truly horrendous situations. But this circuit's precedent makes clear that the threshold for establishing the requisite "abuse of government power" is a high one indeed.

*Custodio,* 964 F.2d at 45. Nothing in the record before us suggests anything that comes close to such abuse.

### 2. *EPA Water Quality Award*

■ Moongate asserts that it had a property interest in the Environment Department's recommendation of entrants for the EPA water quality award. However, Moongate's assertion is unsupported by legal authority. *See, e.g., Martin v. Unified Sch. Dist.,* 728 F.2d 453, 455–56 (10th Cir.1984) (no property interest exists in a renewal of position; negative inference drawn from lack of recommendation is not enough to create a liberty interest); *University of Colorado v. Silverman,* 192 Colo. 75, 555 P.2d 1155, 1159 (1976) (en banc) (recommendation by committee regarding tenure is advisory only; failure to transmit recommendation is not deprivation of property). The Environment Department did not grant the awards, it merely passed names along to the EPA.

Assuming the Environment Department's normal practice was to summarily nominate all applicants for such EPA awards, there is nothing in the record to indicate that Moongate had a legitimate claim of entitlement to such a nomination. *See Edgington v. City of Overland Park,* 15 Kan.App.2d 721, 815 P.2d 1116, 1125 (1991) (City Council was free to reject nomination; mere expectation of gaining seat was not protected property or liberty interest); *see also Gallegos v. City & County of Denver,* 984 F.2d 358, 363 (10th Cir.1993). We therefore affirm summary judgment for Defendants regarding the water quality award.

### C. *EQUAL PROTECTION*

■ Moongate asserts in Count V of its complaint an Equal Protection argument, claiming that similarly situated entities received different treatment and that Moongate's well applications were held to higher standards. *No evidence exists on the record,* however, to show that other applicants were treated differently than Moongate after the Environment Department started enforcing its own regulations. Moongate merely rests on its allegation of equal protection violations stated in the complaint, which is not enough to defeat summary judgment. *Dow,* 105 N.M. at 55, 728 P.2d at 465. Because this claim has no merit, we affirm summary judgment in favor of Defendants.

### D. *FIRST AMENDMENT*

■ Moongate argues that Defendants retaliated against it because it appealed the magistrate conviction. Moongate brings an action under Section 1983 contending that it was penalized for exercising its First Amendment right of access to the courts. We disagree.

■ The right of access to the courts is basic to our system of government and "is subsumed under the [F]irst [A]mendment right to petition the government for redress of grievances." *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir.1989). Because an individual's right of access to the courts is ingrained in the Constitution, state officials "may not take retaliatory action against an individual designed either to punish him for having exercised his constitutional right to seek judicial relief or to intimidate or chill his exercise of that right in the future." *Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422, 1428 (8th Cir.1986). Thus, "[d]eliberate retaliation by state actors against an individual's exercise of this right is actionable under [S]ection 1983." *Morgan,* 874 F.2d at 1314; *see also Smith v. Maschner,* 899 F.2d 940, 947 (10th Cir.1990); 1 *Section 1983 Litigation, supra,* § 3.14 (Cum.Supp. No. 2, 1993).

Moongate relies on Garcia's September 6, 1991, memorandum to Sisneros to show a

retaliatory motive. While the memorandum does state that "[t]he District Court ruling over the lawsuit against Moongate has made it difficult to enforce section 502" of the Regulations, it clearly states that "Moongate refuses to comply with the regulations." The memorandum further observes that Moongate's wells do not meet Environment Department standards and that it is Garcia's intent therefore "to not allow the use of these three wells in the future." Notably, immediately following this contention Garcia states that "Moongate[, however,] will be given sufficient time to either upgrade or replace these wells."

While Moongate purports to catalog instances displaying retaliation, it does not identify any specific evidence of improper motive. In fact, the memorandum can easily be construed as representing Garcia's frustration with Moongate's continued noncompliance with the Regulations and his intent not to allow the practice to continue, *as he warned Moongate he would do prior to the initial lawsuit.* Moongate's briefs ignore the uncontroverted evidence in the record that Garcia and the Environment Department had decided and announced well before Moongate's appeal (indeed, even before the criminal complaint was filed against Moongate) that there was going to be rigorous enforcement of the Regulations, including the requirement that wells receive department approval before being constructed. Despite Moongate's bald, unsubstantiated allegations to the contrary, the record reveals no post-appeal action by the Environment Department with respect to Moongate's wells and proposed wells other than directives to comply with state regulations. Nor is there any substantial evidence to show a retaliatory motive behind the Environment Department's decision to forward Moongate's application for the EPA water quality award without any recommendation from the department. We note that the forwarding of the application took place after the present lawsuit was brought and Moongate makes no claim that the Environment Department's failure to recommend it for the award was in retaliation for filing this suit. On this record, Moongate's retaliation claim cannot withstand a motion for summary judgment.

Given the safety concerns inherent in the Environment Department's approval of wells, it was objectively reasonable for Defendants to deny Moongate's permit applications. The record is replete with examples of Moongate's continued noncompliance with the Regulations. Regardless, Moongate asserts that a retaliation claim involves factual questions as to Defendants' state of mind and Defendants' affidavits fail to rebut this allegation of retaliation; therefore, summary judgment is inappropriate on its First Amendment retaliation claim. *See Setliff v. Memorial Hosp.,* 850 F.2d 1384, 1391 (10th Cir.1988). Even viewed in a light most favorable to this contention, however, the record does not provide sufficient evidence for a jury to return a verdict in favor of Moongate. The record reveals nothing more than conclusory allegations of retaliation; therefore summary judgment was appropriate. *Id.* at 1392.

■ When considering a summary judgment motion, the trial court must determine whether a jury could return a verdict for the plaintiff on the evidence presented. *Smith,* 899 F.2d at 949.

> Our past cases echo the concern of the Supreme Court that many insubstantial claims should be resolved at the summary judgment stage to avoid excessive disruption of government. In claims involving proof of a state actor's subjective intent, more than unsupported allegations of improper intent must be shown.... To survive a summary judgment motion, a plaintiff must point to specific evidence showing the official's actions were improperly motivated. In other words, a plaintiff must produce enough evidence to show summary judgment is inappropriate.

*Walter v. Morton,* 33 F.3d 1240, 1243 (10th Cir.1994) (citations omitted). The Environment Department had the right to enforce *valid* regulations without fear of litigation. Moongate has not presented any evidence that the Regulations are inappropriate. Defendants furthermore did not exceed the scope of the Regulations; they merely required Moongate to adhere to them.

Environment Department officers have the right to enforce valid regulations independent of motive, just as motive need not be examined when probable cause exists for a valid arrest. *Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir.1992) ("An individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government."). For example, a district attorney, in his heart of hearts, may wish to deny a prospective attorney a job because he is an active member of another political party. Such action may comprise a constitutional violation of a qualified attorney's rights, but not if the applicant has failed to pass the bar exam—a prerequisite to practicing law in the state.

" 'There is a clear distinction between the grant of tenure to an employee—a right which cannot be conferred by judicial fiat—and the prohibition of a discharge for a particular impermissible reason.' " *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 81, 110 S.Ct. 2729, 2740, 111 L.Ed.2d 52 (1990) (Stevens, J., concurring) (quoting *Illinois State Employees Union v. Lewis*, 473 F.2d 561, 568 (7th Cir.1972), *cert. denied*, 410 U.S. 928, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973)). Moongate does not present enough evidence regarding retaliatory intent to survive summary judgment. Furthermore, the state has the right to enforce its rules protecting compelling state interests. Summary judgment is affirmed as to Defendants on the retaliation claims.

## E. *SUPERVISION*

Moongate claims that the violation of its rights in the inconsistent treatment of its well applications was the result of poor Environment Department supervision. Moongate contends that Sisneros' and Espinosa's indifference to the supervisory process violated Section 1983. We disagree.

The concept of respondeat superior is not applicable to Section 1983 cases. *Monell v. Department of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). "[E]ach defendant, whether individual or entity, may be held liable only for

that defendant's own wrongs." 1 *Section 1983 Litigation, supra*, § 6.4, at 317. Supervising officers may not be subjected to Section 1983 liability simply by way of their control over subordinates. *Id.* Moongate has presented no evidence of any independent wrongdoing by either Espinosa or Sisneros. *See Haynesworth v. Miller*, 820 F.2d 1245, 1262 (D.C.Cir.1987). Furthermore, as stated above, Moongate's constitutional rights were not violated. Therefore summary judgment was appropriate as to Espinosa and Sisneros.

## F. *QUALIFIED IMMUNITY*

Defendants argue that they are entitled to qualified immunity because Moongate has not proved that their conduct violated any clearly established constitutional rights. *See Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). For Moongate to defeat Defendants' qualified immunity, it must specifically show that Defendants: (1) violated a clearly established constitutional right; and (2) acted under color of state law. *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir.1988). As discussed above, however, Moongate has not shown that its federal rights have been violated. Because we affirm summary judgment in favor of Defendants, we need not address the defense of qualified immunity.

## CONCLUSION

"To the victor belong only those spoils that may be constitutionally obtained." *Rutan*, 497 U.S. at 64, 110 S.Ct. at 2731. New Mexico has a compelling state interest in protecting its citizens from contaminated water, and the Environment Department is held to defend that interest. All water users in the state must comply with the Regulations, and the Environment Department has the authority to deny well applications. Moongate was warned that it must comply with the Regulations or face denial of its applications; Moongate did not comply and the applications were denied. The intervening court case was immaterial. We find that Defendants did not violate Moongate's consti-

tutional rights and affirm the award of summary judgment.

**IT IS SO ORDERED.**

DONNELLY, J., concurs.

HARTZ, J., specially concurs.

HARTZ, Judge, specially concurring.

I concur in the judgment and join in all of Judge Alarid's opinion for the panel except for the last two paragraphs of Section D.